Coaeter, Judge.*
The appellant bought an action of detinue, in the Superior court of law for Hanover county, against the appellee, for a negro woman slave, named Heck, of the value of §400, and for her two sons, Paul, of the value of §400, and John of the value of §300.— The Jury found for the plaintiff the negro Beck, of the value of §475, Paul of the value of §375, and John of the value of §300. They then proceed in these words: We further find the said negro woman Beck, has departed this life, since the institution of this suit, to wit, during the present year.” They do not find any damages for the detention of either of the slaves.
The court gave a judgment in the usual form, for the negroes Paul and John, at the bottom of which judgment is this entry: “No judgment being given for the negro woman named Beck in the declaration mentioned, or her value, the Jury having found in their said verdict that she has departed this life, since the institution of this suit, to wit, during the present year.” To this judgment a supersedeas was awarded.
*344 ®rs^’ was >ncfinefi to be of opinion, that tlie Jury had a right to find the slave Beck for the plaintiff; and fix a nominal value at least; and although they had fixed a real value in their verdict, yet there being no motion for a new trial, on the ground that the value was too high, this court might presume it was well ascertained, because the defendant may have sold her for $475; although dead, she might be considered, as between these parties, to be of that value, and consequently that the court could give judgment for her, so that the plaintiff might recover her value so ascertained. Had I been confirmed in this opinion, then I should have been for reversing the judgment; and would either have concurred in entering a judgment for Beck, of the value fixed by the Jury, or I would have sent tlie cause back, with liberty to the appellee to move tlie court for a new trial, in order that it might be seen whether there was any such reason, as above supposed, for valuing a dead slave at $475. If I could have so sent it back, justice I think would have required mo to do so; not only because this is a new case, unsettled by any of the courts; but because the Jury, in the first part of the verdict, having found this, slave for the plaintiff as though she was alive, may have thought it was their duty to value her, as if alive; and I think it but right to presume, that no such reason, as above supposed, for assessing the value even higher than that laid in the declaration existed, because the court refuse to give judgment for that value, or to say any thing in relation to it which could induce such a supposition.
I had at first doubted, whether it was not error for the Jury to find a greater value than that laid in the declaration; but I find it otherwise settled in Bigger’s adm’r v. Alderson,(g) in which case the court also expressly says, the value is to be fixed at the time of the verdict. Why? *345 because the value may have increased, even beyond the plaintiff’s own estimate when he sued; in fact the court there say, it is not important that the value should be laid in the declaration (I presume this is intended after verdict) because the Jury are to fix the real value at the time of the verdict. But if they are, to give the plaintiff the increased value at that time, they cannot take an anterior date, so as to fix a greater value on the defendant, when he cannot go back to an anterior date so as to establish a less value. On further reflection and consideration however, I have come to the conclusion, that in the case of the death or destruction of the property, there can be no verdict or judgment for the specific thing; but that the regular course would he, for the Jury, in responding to the whole issue, to find property in the plaintiff, and damages, if any, for the detention, and the death or destruction of the property, since the suit, in order to shew why the value was not assessed; and the judgment will be for those damages only, and the costs. If great profits had been received either by a sale, groat hires, or otherwise, by the defendant, l incline to think the Jury might give damages for the detention, according to what the defendant had actually received; but as to the value, the time of ascertaining it, is correctly laid down in the case in this court above referred to; and that, nothing could justify finding any value as to property dead or destroyed by act of God. Even in case of destruction by act of the party, the Jury can only give redress by way of damages for detention, or privation of property; for they cannot say that property dead or destroyed is of any value.
Suppose the slave had died five years before the verdict found, the suit having depended a long time, and the Jury were asked to assess hires, or damages, for the detention to the date of the verdict. Could not the defendant shew that no such hires had been received; for that *346 ^16 neSr0 was But say she was not dead, but that five years before the verdict she had, by the visitation of God, become, and had remained ever since a confirmed maniac, and a perpetual expense; would full hives according to her anterior value be given, down to the date of the verdict? Could he not shew this also as to her value? or must the Jury find her value as before that visitation? We are not at liberty nor are the Jury, to speculate on the chances that she would not have died, or been thus visited, had she not been detained from the plaintiff, or that he might have sold her and laid his money out in other slaves, or lottery tickets, and thereby gained great profits. The whole injury which the law supposes the party to have sustained, down to the verdict, is the reasonable profits to that time: he is to be retributed that far, by way of damages for detention, and to recover back the property or its value at that time; if the slave has grown up and become very valuable at tfiat time, then farther to detain, is doing an injury to that amount; and if the property is not delivered up, the party is retributed for that value or injury by the judgment; if she has become old and infirm, her hires have been diminishing from year to year, and her value now is glO.though it was an hundred when the suit was brought. Their hires down to the verdict retribute the party for the injury of detention, and the slave or her then value compensates the whole injury. This is the injury complained of. The slave or her value is asked in the declaration and given by the judgment, and damages for the detention are also to be settled at the trial. The plea puts these matters as well as the title of the plaintiff in issue. If the title only is found for him the verdict is not sufficient to authorise a judgment in the case, unless it also appears by the verdict that the value could not be assessed. It is as necessary so to assess the value, and damages for detention, as to assess damages in assumpsit, where the plea of non assumpsit denies as well *347 the whole debt, as the particular amount or damages claimed. The value and damages are equally within the issue in this case; and evidence isas necessary to certain them to the Jury, as to prove the same due in assumpsit; and the defendant is equally entitled to shew that they are less than claimed, in this case as in that. The plaintiff proves the value of the slave, or the value of her labour at one time; does this preclude the defendant from shewing she was not worth so much at that time? Surely not. Will he be denied the right of proving that she was worth less at a subsequent time, and before the verdict? Surely not: unless the plaintiff has the privilege of fixing the time when she shall he valued: hut the law correctly fixes that time at the date of the verdict. Suppose she had not been dead at the time of the verdict, hut both her arms had been amputated, could not the defendant give this in evidence on the enquiry as to her value?
But it may he said, the jury cannot find that she is dead, for if so they could give no value, and this would be to abate the suit; for if a plaintiff was to sue for a slave, and state in his declaration that she was dead, a demurrer would lie. Admit the last proposition to be true, yet the death of the slave after the suit could not be pleaded in abatement or bar, any more than payment of an account or any part of it, after an action of assumpsit brought, or the delivery of property after detinue. The plaintiff will recover his costs, and also any damages the jury may assess, and such matter will come out on the general issue, which general issue involves, as before said, the just retribution to which the plaintiff is then entitled, under the claim in his declaration. But the verdict is for Beck, of the value of $475. if this value has been ascertained, as the law says it should be, at the time of the verdict, on what principle could the jury find that though she was dead, she was worth that *348 sum? Is not such verdict upon its face manifestly-re pugnant and void?
The action of detinue is little used in England, and we must be governed by general principles, and by analogy to the redress given for similar injuries; and also by considering the lights of the defendant after judgment in this particular action.
It is laid down in one case, that in detinue for charters, if the issue be upon the detinue, and it be found that the defendant hath burnt the charters; the judgment shall not be for the charters, for it appears he cannot have them, but he shall recover the value of the land in damages. (h) But the jury found the non-existence of the thing sued for. Regularly the judgment must be for the thing sued for, if to be had; if not for the value; but as the verdict shewed the thing was not in existence, though by the act of the party which might have done injury to the value of the land, yet no judgment could be entered for it; the law will not do a vain thing. Here also, and that too by the act of God which prejudices no man, the thing no longer exists, and yet I am asked to enter judgment for it.
But the defendant has a right to deliver the property, and is not bound to pay the value.(i) If then, we have a right to enter a judgment for a dead negro, he must have a right to deliver the corpse, otherwise he is deprived of the power thus to discharge himself. Surely he could not deliver the coipse; and yet that is the thing for which we must give judgment on this verdict. We cannot expunge that part of the verdict, though we may set it aside as repugnant, and grant a new trial. But trover will lie, although the property be dead, because the time of the conversion gives the date to which the action relates; and the very conversion may cause the *349 death of the property, (k) The recovery in that action amounts to a sale of the property at the túne of the conversion, and vests the property in the defendant, (l) from that time, so that if he has sold it even pending the suit, or before, and the plaintiff never gets his damages, he cannot bring detinue against the purchaser. But in case of detinue, the property is never transferred, until the alternative value is received. It continues the property of the plaintiff at the time, and after judgment, and therefore, in this case, if we can suppose property in a dead slave, she was the plaintiff’s propei'ty at and after the judgment. She was certainly his property when she died. How then can she have died the property of the defendant? If she died the plaintiff’s property can the defendant be compelled to pay for her, as though she were in full life, and thereby acquire title to her? Will the law compel him to purchase a dead slave at $475, when it will not compel him to purchase her, at that price, if alive, but would allow him to continue the propei’ty still in the plaintiff by delivering her to him?
So too in ti’over, if the conversion consists altogether in a refusal to deliver on demand, and the thing is then dead, or had been forcibly taken away from the defendant, no action will lie.(m) And even in trover, the party may discharge himself by the delivery of the property, and damages will be assessed accordingly; but this must be done at, or before trial, and by the assent of the court; if he cannot do this, he must stand to the loss, as the conversion is the gist of the action.(n)
The most I could do in this case, would be to set aside the verdict as imperfect and repugnant on its face, because it assescs- a high value for a slave who is found to be dead: with instruction to the court to direct the jury, that if they find property in the plaintiff, but that *350 the slave is dead, they must find this last fact specially, and in that case, only find such damages for the detention, as the plaintiff may be entitled to, according-to the evidence.
Brooke, Judge.
The question, in this case is, whether the finding of the Jury, that the slave Beck died after the institution of the suit, is to deprive the plaintiff of his judgment for her value. A correct decision of it will depend on an accurate view of the nature of the action, and the pleadings. The object of the action of detinue, is, to recover the specific property detained, or its value, and damages for detention; it is like trover, an entire action; judgment for the defendant is a good bar, in an action of trover, for the same thing. So, a judgment in trover gives the property to the defendant, and is a bar to an action of detinue. It is not denied, that the destruction of the property, before trial, is no defence in the latter action; in that action, the question is, to whom did the property belong at the time of the conversion? and its object is, to recover the value thereof in damages, The action of detinue is only a broader action; substantially, it is the same, with the addition, that the specific property may be recovered, if to be had, and if not, the alternative value and damages for detention.
The alternative is given, to meet the accidents that may happen to the property; which, in trover would be an unavailing defence. The latter, in England, is most frequently resorted to, because of the wager of law, which would defeat the action of detinue. Under our law, that objection to the action of detinue does not apply; and it is a valuable remedy, particularly in relation to property in slaves; and would be abandoned, if the destruction of the property was to defeat it: the action of trover would he preferred.
*351 According to the form of the action of detinue, also, it cannot he maintained for the hire of the property, and damages for its detention only- In both actions the value of the property must be recovered or nothing: so that in this case if the death of the slave is to avail, the judgment must be for the defendant as to her. No example can be shewn, of a judgment in detinue, for a personal chattel, in which value is omitted. The case from Rolle of charters, has very little application. The, action for charters is a mixed action} it partakes of the realty, there may be summons and severance. In detinue for a chattel a capias lieth} not so for charters.(o) But even in that case, the judgment was for the value of the thing, which was substantially the object of the suit. In the absence of all direct precedent, therefore, I infer, even from that case, that no judgment can be rendered in detinue, omitting the value of the property in controversy. An omission, to find the value of the slave Beck, in this case, by the Jury, would have rendered the verdict imperfect, and no judgment could have been given on it, for hire and damages only.
The finding then by the Jury, that the slave Beck was dead, was irrelevant to the issue} otherwise, a verdict for hire and detention of the property, would be a perfect verdict, on the principle, that whatever a Jury may find on a special verdict, they will be presumed to have found in a general verdict, if that verdict is questioned. So much for the nature of the action.
The pleadings, generally, are the best tests of the law. The plea of non detinet traverses the allegations in the declaration, and puts it upon the plaintiff to prove them. As to the possession in the defendant, that need only be proved, either at the suing out of the writ, or at some time before. In the case of Burnley v. Lambert(p) that was the decision of this court. That decision excludes *352 any other period; it is not incumbent on the plaintiff to prove possession in the. defendant at any after period; having proved property in himself, and possession in tho defendant at or before suing out his writ, and value, the, proof of the plaintiff is complete: and it follows, that any negative proof by the defendant as to the possession after the writ, would be improper.
But it is contended, that proof of the death of the slave relates to the value, and not to the possession. Is it correct to say, that proof of the non-existence of the thing is proof of its value? Value is a question of plus or minus. The inquiry pre-supposes the existence of th’c property, and possession in the defendant. It goes to shew, that he was not in the possession of the slave Beck, at the time of the trial; that is, that he was not in a condition to deliver her to the plaintiff, which is interdicted by the decision before referred to. The plea relates to the time of suing out the writ, or to some previous period as regards thepossession, and not to a time subsequent, according to that decision.
Proof therefore, that the defendant had lost the posses-, sion, by death or otherwise, at a later period, was irrelevant to the issue; and the Jury having found the fact, that finding is mere surplusage: the rule being that utile per inutile non vitiatur. For these reasons I think the judgment erroneous; that it ought to be reversed, and that judgment should be rendered for the value of the slave who died after the action was commenced.
Roane, Judge.
This was an action of detinue, brought by the appellant, in the Superior court, to recover three negroes, stated to be of separate and specified values. Among them is the negro Beck, stated in the declaration to be of the value of $400. The damages are laid at $1200. Issue was joined on the plea of non detinet. In September 1817, the Jury found “for the plaintiff, the negro Beck, of the value of $475,” and the two other *353 negroes, at specified values, but find no damages. They further find, that the negro Beck died “ since the institution of this suit,” to wit, during the present year. The judgment in the Superior court was, that the plaintiff recover the other two negroes, of the values respectively found, if to be had, and if not, their respective values; no judgment being given for Beck or her value, the Jury having found, that she died since the institution of the suit, in the present year.
From this judgment the appellant obtained a superse - deas, to this court, and the question now is, whether the judgment aforesaid, as it omits to give a judgment for the negro Beck, be correct or not. That judgment as to her, can only be justified, by taking the date of the finding, and not that of the' institution of the suit as the criterion, as well in relation to the right, of property itself, as to settling its alternative value.
This question is to be decided, as upon the present pleadings. I shall enter, therefore, into no inquiry, whether the action will lie for a negro that is dead, at the time of the institution of the suit; or for one dying after the institution of the suit, and respecting which, the Jury are permitted by the pleadings, (if there be such a case,) to inquire into that fact, as at such posterior time, and at the date of the verdict. In order to simplify this case, too, I will consider this action as having been brought, only for the negro Beck. There can be no difference, in. principle, between that case and the one before us.
It is a general principle of law, that the evidence, the pleadings, and the verdict, all have reference to the time of instituting the suit. Thus, as to the evidence, it was held in 1st Munf. 22. [Harrison v. Brook] that an award made after the institution of the suit, was not permitted to be given in evidence on the plea of non assumpsit. As to the pleadings, it was held in the case of Smith v. *354 Walker(q) that the plea of the act of limitations was bad for referring to the time of the plea, instead of that of the institution of the suit:(r) and a similar plea was held ^at*’ an<* 'ssue j°úied thereupon immaterial, in the case of Henderson v. Foote.(s) As to the verdict, the case of Burnley v. Lambert(t) is more than an authority. It not only negatives the idea that the verdict relates to the time of its rendition, but asserts that it has relation, as to the possession, to a time anterior to that of the institution of the action, namely, to the day mentioned in the declaration. It, therefore, goes beyond the point that I have occasion to contend for in the present instance, namely, that of the institution of the suit, and is a full and pointed authority. Mr. Marshall as counsel for the appellee, in that case, while he admitted that if the property should perish, or be disposed of, after the action was brought, the plaintiff might recover the alternative value, (which could not be the alternative value, as at the time of rendering the. verdict,) contended, that the time of the institution of the action, and not a prior time, formed the criterion as to the proof of possession. He contended for this on the ground that the plea and declaration were in the present tense, and therefore related to the time of the institution of the suit. The court overruled this argument, by saying, that it proved too much: that it would equally prove that possession must be shewn to he in the defendant, not only at the time of issuing the writ, but also at that of rendering the verdict. This decision, therefore, is a clear authority, that notwithstanding the verdict may, also, use words in the present tense, they do not justify an inquiry into the fact of possession as at that time, but relate to the time put in issue by the pleadings. This idea is further corroborated by several cases in this coui’t. In the cases of New- *355 by's adm’r v. Blakey(u) and Elam v. Bass’s ex’rs(v) it was held, that a defendant may protect himself on the jilea of mm detinet by proof of five years possession of the negroes, before the emanation of the writ. If a plaintiff lies by, without bringing a suit, for more than five years, he is not permitted to recover, and the five years vests a title in the defendant. But this inference would be very unjust, in relation to a plaintiff who has committed no laches, but, on the contrary, lias brought his suit within one month after he lost the possession, merely because the time of rendering the verdict was protracted, by the delays of the courts, and the management of the defendant, to a longer jieriod than five years from the ineepüon of the defendant’s possession.
These principles, and these cases then, clearly prove, that the Jury were limited by the pleadings, in this case, to the jiroof, of a possession, as at the time of the institution of the suit, and had no right to receive evidence, or find a verdict, touching the non-existence of that possession, as at the time of rendering the verdict. That was a point ulterior to the one made by the pleadings. It was not in issue, and therefore it was irregular to offer evidence in relation to it, or find it by the verdict.
If the plaintiff could have foreseen, from the pleadings, that such evidence would have been offered, he might have repelled that evidence, and the result might, as to the actual death of the negro, have been entirely different. We can, therefore, not know this fact, in this case, and are to decide the case, as if it were not in the record. That fact is, in truth, not before us, which is precluded by the issue between the parties, and to which the evidence and verdict have been illegally and irregularly extended. We are also to bear in mind, that although the negro is emphatically found to be dead, it is but little more than finding, that she was not in the possession or *356 5p°wer of the defendant, at the time of rendering the verIt Is unimportant from what cause this want of possession proceeded-, whether from the natural death of the subject sued for, or, (for example,) by wilful destruction of it, by the defendant after the institution of the action. In the last case, it would scarcely be contended that the defendant should avail himself of his wrong, to defeat the plaintiff’s action, if this fact were even found by a special verdict.
If this evidence, therefore, ought not to have been received, nor the verdict extended to the present point, what is to be done in the actual case before us? The verdict in question is a general verdict, and not a special one. It is not a special one, because it submits no question of law to the decision of the 001114;. It is not a special verdict, for the further reason, that a Jury ought not to submit, in such a verdict, a matter which is not pertinent to the issue, and much less one which is entirely out of that issue. (7 Bac. 4.) If the issue relates to the possession, as at the date of the writ, it is entirely foreign to '¿hat issue, to inquire thereof, as at the time of finding the verdict.
This verdict, however, is not bad on account of its finding, also, this matter, which is not in issue in the cause, after having found the negro in question “for the plaintiff.” The finding of that which is within the issue, is not vitiated by finding that which is not. In such cases utile per inutile non titiatur; and that which is not within the issue will be rejected as surplusage, the jury having nothing to do with it. (7 Bac. p. 20.) Thus in an action of assumpsit against an executor, on a promise by Ms testator, and issue was taken on the plea of non assumpsit, the jury found for the plaintiff, but they likewise found, that the testator was dead before the day on which the promise was alleged to have been made. The verdict was held to be good, and the last part rejected, on the principle -of its being surplusage, and not withist *357 the issue. (7 Bac. 22.) In principle, there is no difference between this case, and the one before us. Again, it is a rule, that if the jury find one thing, which is contrary to what is confessed in the pleadings, the verdict, as to so much, is bad, and it is to be rejected as surplusage; for the jury have nothing to do with what is confessed or admitted by the pleadings. (7 Bac. 41.) In ¿he case before us, the pleadings, are not only restricted to the date of the writ, as to the fact of possession, but the existence of the subject seems admitted. On these pleadings, the defendant may object, that he does not detain the negro, but that another man does; or he may say, that he does not detain the plaintiff’s negro, because she is his property, and not that of the plaintiff. But on this issue, it could never for a moment be considered, that the existence of the negro was denied. If a tenant in dower pleads, that the demandant’s husband did not die seised of the premises, and issue is joined on that plea; and the jury find that he died seised, but further find, that the estate was not liable to dower, the latter part of the verdict is bad, as finding what is virtually confessed by the plea. (7 Bac. 41.)
Again;—it is held that the plea of non cepil in replevin, confines the issue to the taking, and allows the property to he in the plaintiff; and, therefore, no evidence shall be received, or verdict found on tills plea, to disprove the property of the plaintiff. (2 Espin. 11.) So in debt on a bond to perform an award made by J. S. the plea was, that J. S. made no such award, and issue; the jury found that J. S. made the awrard, but also found matter in avoidance thereof; the last part of the verdict was held to be bad, and was rejected, because it was contrary to the issue. (7 Bac. 41.) These cases, by analogy, completely justify a rejection of the last part of the verdict before us; as being contrary to what is put is issue, and is admitted by the pleadings.
*358 The decisions of this court completely shew, that the verdicts of juries may he extended, by the clerk, from the general form in which they are found. This verdict, so extended, would be, that the defendant does detain the negro in question, and that she is of the value of $37 5. The subsequent finding of the fact, that she is dead, is clearly repugnant to such extended finding, and is to bo rejected. By the first part of the verdict, the jury not only find the result in favor of the plaintiff, but find the fact also which justifies that result, and which is repugnant to, and overrules the latter finding. That complete finding by them, so compounded of law and fact, is not to be varied by any subsequent, and irregular finding, on which they have erected no counter conclusion nor authorised the court to draw one. Such an authority can only be devolved on the court by a special verdict.
If this action were brought for this single negro, who had been for years withheld from the plaintiff, and whose hires were considerable; if on the ground in question the right to the principal subject was defeated, that to the hires or damages could not I apprehend be sustained; and yet, this would be a case of extreme hardship, as, at the time of the emanation of the writ, the right to both was perfect. The damages follow as incidental to the recovery, but cannot be obtained, in this action, without it.
It has been argued that you must receive this evidence, as at the time of the verdict, because that time is the criterion as to settling the alternative value. This has never been solemnly established by this court, nor would the inference clearly result from it, if it had. In the case of Bigger’s adm’r v. Alderson. (1 H. & M. 54.) Judge Carmstgtoít, indeed gave this as his opinion, but the other Judges were silent on the subject; and the judgment which was given in that case did not affirm this principle. For any thing appearing in that case, the value was settled at an anterior time,—and at the *359 time of suing out the writ As for the English decisions they are so scanty on the action of detinue, that I can find in them nothing decisive on this point. It is arguing in a circle to say, that unless this he the rule, the plaintiff would get too little for his property. He would so, in relation to a subject of increasing value; but it may be retorted that he would get too much in relation to a subject of a contrary character; and as to a subject of stable value, it is immaterial which rule is to prevail.
If however, this could be considered as the settled law, in relation to the alternative value, it does not follow, that it would attract to it the principal inquiry, relative to the possession of the subject itself. It would not change the issue made up between the parties, as to the right of the property, and which, in terms, at least, also extends to the alternative value. In the case of judgment for the negro by default, or on demurrer, and a writ of inquiry issued thereafter, to ascertain the value, if the time resorted to, as to the last, be that of the verdict, the time in relation to the first is undoubtedly different; it is, at least, that of suffering the judgment, if not that of the date of the writ. I apprehend, therefore, that the position in question is neither shewn to he solemnly settled, nor would the inference contended for, clearly result from it, if it were. As for the criterion now contended for, it would destroy the action of detinue altogether, in cases in which the suit is long protracted, and the subject sued for is of a decaying and perishable nature,,
The ground taken however in this opinion, does not extend to cases, in which the subsequent death of the negro is relied on, by plea pais darrein continuance, or otherwise; and in which the plaintiff had, consequently, an opportunity to contest that point upon the evidence. If the criterion assumed by the last part of the verdict, be sustainable, the plaintiff ought to have an opportunity to he heard upon it. I decide nothing however upon *360 that point, I only decide upon the actual case which is now before us, upon the pleadings.
As long, therefore, as we are, in rendering our judgments, to respect the allegata and probata of the parties; as long as we are to shut our eyes against facts which are not known to us upon the pleadings, and are to reject impertinent matter, which juries may put into their verdicts, we must decide,this case for the appellant. We must so decide it, however the case might be, if through the laches of the appellant, the slave had been permitted to die, before his right had attached by bringing the action. My opinion is therefore, and such is the opinion of the court, that the judgment of the Superior court be reversed, and entered, also, for the slave in question, if to be had; and if not for her alternative value.
tAb bub.

 Cabell absent.

 1 H.& M. 54.

 Mol. ab. 607. Ba. ab. title “Detinue,” letter B.

 1st Morg. Vad. Mecum, 416. Kelw. 646.

 Ba. abr. Trover, D. E.

 Ba. abr. Trover, B. G. 8.

 Ib. A. Str. 1078.

 Esp. N. P. 596.

 C. Lit. 286.

 1 Wash. 308.

 1 Wash. 135.

 3 Call 248.

 Same in Backhouse v. Jones.

 1 Wash. 308.

 3 H. & M. 57.

 4 Munf. 301.