William J. HARNETT, Appellee,

v.

Tom J. BILLMAN; Clayton C. McCuistion, Appellants,

and

Epic Mortgage, Inc., a Delaware corporation; Cavalier Oil Corporation, a Delaware corporation; Epic Realty Services, Inc., a Delaware corporation, Defendants.

William J. HARNETT, Appellant,

v.

Tom J. BILLMAN; Clayton C. McCuistion, Appellees,

and

Epic Realty Services, Inc., a Delaware corporation, Defendants.

Nos. 85–2338, 85–2339.

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1986.

Decided Sept. 16, 1986.

John R. Fornaciari, Washington, D.C. (Robert M. Disch, Steele, Simmons & Fornaciari, Washington, D.C., on brief), for appellants/cross appellees, Billman and McCuistion.

Thomas Earl Patton, Washington, D.C. (Brett L. Antonides, Louis R. Moffa, Jr., Schnader, Harrison, Segal & Lewis, Washington, D.C., John E. Harrison, Light & Harrison, P.C., McLean, Va., on brief), for appellee/cross appellant.

Before RUSSELL, PHILLIPS and CHAPMAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Tom Billman and Clayton McCuistion appeal from the district court's judgment, after a bench trial, awarding William Harnett more than $60,000 in compensatory damages and $35,000 in punitive damages on his claims of common-law fraud. Harnett has cross-appealed from orders of the district court granting summary judgment against some of his claims on res judicata grounds and dismissing other claims based on federal and state securities law violations and on alleged breaches of fiduciary duty. We conclude that Harnett's fraud claims, as well as much of the securities and fiduciary duty claims upon which he did not prevail, were subject to the bar of a prior judgment involving these same parties. We also hold that to the extent that Harnett's securities and fiduciary duty claims survived the prior judgment, they were properly dismissed because, as a matter of law, Harnett could not prevail on these claims. We therefore reverse the judgment in favor of Harnett on his fraud claim and affirm the dismissal of his other claims.

I

In 1975, Harnett purchased 1,250 shares of the Equity Programs Investment Corporation (EPIC) for $5,000. By 1983, Billman and McCuistion together owned more than 90% of EPIC's shares. Over the years, EPIC had become the parent corporation of a number of subsidiaries, including EPIC Mortgage, Inc. (EMI) and EPIC Realty Services, Inc. (ERSI).

In June 1982, ERSI became an independent corporation in a spin-off transaction, and a separate spin-off from EMI led to the creation of EPIC Mortgage Servicing, Inc. (EMSI) on March 1, 1983. Harnett received shares in both of the new companies equal to what the defendants represented was his proportion of ownership in EPIC. In December 1984, ERSI was absorbed in a Delaware short form merger by Realty Services Holdings, Inc., and in November 1984, EMSI was similarly merged into Cavalier Oil Corp. (Cavalier). Billman and McCuistion are the principal shareholders of Cavalier. A short form merger permits the "freezing out" of minority shareholders. Harnett had received stock in ERSI and EMSI when they were spun off, but was frozen out in the short form mergers.

After the spin-offs of ERSI and EMSI, Harnett still remained a shareholder in the original EPIC corporation. In early 1983, however, EPIC and its EMI subsidiary were purchased by Community Savings and Loan, Inc. (CSL), a Maryland-chartered savings and loan association. Billman and McCuistion also owned a controlling interest in CSL. In January 1983, Harnett received a notice seeking the approval by EPIC's shareholders of a merger of EPIC into a CSL subsidiary. EPIC shareholders were to receive non-voting preferred CSL stock. For various reasons, most apparently relating to the nature of the stock he would receive, Harnett was unsatisfied with the merger plan. By February 1983, Harnett had become the sole remaining minority shareholder of EPIC. Harnett refused Billman's offer to purchase Harnett's shares in EPIC.

The merger of CSL and EPIC was consummated on March 14, 1983. Prior to the merger, the principal business of EMI consisted of mortgage servicing, but because

for accounting reasons the servicing portfolio then owned by EMI would not be fully reflected on the books of the new CSL/EPIC conglomerate, EMI's existing servicing portfolio became the primary asset of the new spin-off from EMI, EMSI. EMI and EMSI entered into a sub-servicing agreement, dated March 1, 1983, under which EMI performed for a fee the servicing work for mortgages in EMSI's portfolio. After the EPIC/CSL merger, EMI also became the servicer, and itself owner of the servicing rights, of new mortgages originated through the new EPIC/CSL entity. EMSI, which was a company now independent of the EPIC/CSL group, did not receive any of the new servicing business, but retained only the servicing rights in its portfolio at the time of its spin-off from EMI.

In October 1983, Harnett filed an action, which we will refer to as *Harnett I*, in the United States District Court for the Eastern District of Virginia. The amended complaint in *Harnett I* alleged claims for common-law fraud, for state and federal securities fraud, and under RICO, as well as a shareholder derivative claim. These claims centered around Harnett's allegations that Billman and McCuistion made fraudulent misrepresentations or omissions in conversations and correspondence to him in late February and early March 1983, that the documents received by Harnett in connection with the EPIC/CSL merger did not make adequate disclosures, and that Billman and McCuistion had misappropriated, through employee stock options and assignments from other shareholders, shares of EPIC. Paragraph 49(h) of the amended complaint in *Harnett I* stated that "[d]efendants, and each of them, failed to disclose to Harnett that prior to the merger of EPIC into CS & L Service Co. EPIC would spin off its mortgage servicing operation, including escrow account balances, to a new corporation."

Harnett engaged in extensive discovery in *Harnett I*, and his document production requests in that earlier litigation included requests for the records of EMSI, as well as of other companies connected to EPIC.

Ultimately, pursuant to a settlement that permitted Harnett to pursue state appraisal rights in state court, *Harnett I* was dismissed with prejudice in February 1984.

Harnett was subsequently frozen out of his interests in ERSI and EMSI, and commenced the instant action in the district court in February 1985. The complaint in this case alleged claims under federal and state securities acts, for common-law fraud, and for breaches of fiduciary duty by Billman and McCuistion. The acts that form the predicate for these claims included the dilution of Harnett's interest in the ERSI and EMSI spin-off companies by virtue of the misappropriation of EPIC stock by Billman and McCuistion, alleged misrepresentations to Harnett that the new EMSI company would receive the benefit not only of EMI's existing mortgage servicing business but also that generated by future mortgages originated through the EPIC/CSL group, the execution of an EMI/EMSI sub-servicing agreement, and the alleged concealment from Harnett of the true fact that EMI, and not EMSI, was receiving the servicing business on new mortgages originated through EPIC/CSL.

Following motions for summary judgment by the defendants in this case, the district court dismissed on res judicata grounds Harnett's claims relating to share misappropriations, dismissed the securities law claims as not arising out of "the purchase or sale of securities," and dismissed the fiduciary duty claim because Harnett, who was no longer a shareholder of ERSI or EMSI, had no standing to make a derivative claim. The district court refused, however, to dismiss Harnett's common-law fraud claims relating to the EMSI spin-off and the alleged misrepresentations about the allocation of servicing work between EMI and EMSI.

After discovery, the case proceeded to a bench trial. The district court found in favor of Harnett, crediting Harnett's testimony that Billman and McCuistion represented an original intention that EMSI would receive all future mortgage servic-

ing originated by the EPIC/CSL entity, but had failed to inform Harnett when this representation was no longer the true state of affairs. The court found that Harnett had reasonably relied to his detriment upon the misrepresentations by Billman and McCuistion, and awarded compensatory damages in excess of $60,000 and punitive damages of $35,000. The compensatory award was arrived at by calculating the amount Harnett would have received for his EMSI stock if EMSI had, in fact, done the servicing work retained by EMI. These appeals followed.

## II

The principal argument advanced by Billman and McCuistion on appeal is that the district court should have dismissed Harnett's fraud claims, as well as the other claims that were dismissed for other reasons, as barred by the prior judgment entered in *Harnett I.* Res judicata precludes the assertion of a claim when "a judgment on the merits [in a prior suit] bars further claims by parties or their privies based on the same cause of action." *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Nash County Board of Education v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir.1981); *see also Adkins v. Allstate Insurance Co.,* 729 F.2d 974, 976 (4th Cir.1984).

There is no question but that the final judgment entered in *Harnett I* is "a judgment on the merits" involving the same "parties or their privies" as those involved in the instant case. The agreed dismissal of *Harnett I* binds the parties to that litigation, and each of the parties in this case was a named party or privy to a party in *Harnett I.* Although Harnett's complaint in this case names some different corporate entities than those named in the earlier litigation, the principal parties in each action were Harnett, Billman, McCuistion, and corporations that Billman and McCuistion controlled and of which Harnett was a present or former shareholder.

Harnett argues, however, that his claims in this case escape the preclusive effect of the judgment in *Harnett I* because the claims made in the two lawsuits are not the same claims for res judicata purposes, and because, as regards the EMSI fraud claim, he did not know of the existence of the allegedly fraudulent behavior at the time the judgment in *Harnett I* was entered. We conclude, however, that most of the claims made by Harnett in this case are barred by the judgment entered in *Harnett I,* and that the district court improperly failed to enter summary judgment for defendants on this basis.

We first address the question whether the res judicata effect to be given the judgment in *Harnett I* is a matter of federal or state law.[1] We conclude that whether a federal court sits in diversity or has some other basis of jurisdiction, questions of the effect and scope of its judgment involve the power of the federal tribunal itself, and are not varied merely because state rules of decision underlie the judgment. *See Restatement (Second) of Judgments* § 87 (1982); C. Wright, *Law of Federal Courts* § 100A, at 695–96 (4th ed.

1. The parties have not raised this issue. In many cases, the issue whether state or federal law governs a res judicata question arising out of a prior judgment entered by a federal court sitting in diversity is irrelevant, for often the state and federal rules on judgment will coincide. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4472, at 735–36 & n. 28 (1981 and Supp.1986). It is not clear to us that such is the case here, however, and although we do not attempt to determine what effect a judgment entered by a Virginia federal court would have if Virginia claim preclusion law were to be applied, we note the possible divergence of federal and state judgment rules on the critical matter of the breadth of claim preclusion. *Compare Restatement (Second) of Judgments* § 24(1) (claims precluded are those arising out of the same transaction or series of connected transactions, and are precluded even if they constitute separate "causes of action"), *with Bates v. Devers,* 214 Va. 667, 202 S.E.2d 917, 920 (1974) (res judicata applies only to claims arising out of "same cause of action"); *Carter v. Hinkle,* 189 Va. 1, 52 S.E.2d 135 (1949) (because separate causes of action exist for personal injury and property damage arising out of same automobile accident, judgment on one cause of action does not preclude litigation of second).

1983) (advocating this rule, and approving of Restatement position). *But cf. Restatement (Second) of Judgments* § 87 comment b (federal courts should adopt state law to determine preclusive effect when issue involves "considerations going to stability of legal relationships," such as privity); *Spiker v. Capitol Milk Producers Cooperative, Inc.*, 577 F.Supp. 416, 418–19 (W.D.Va.1983) (applying this exception in case where privity at issue). In this case, where the application of res judicata rules does not touch upon an important question of state law such as privity, we will apply federal rules of decision to measure the preclusive effect of the judgment in *Harnett I.*

Having decided that federal res judicata law determines the effect of the judgment in *Harnett I,* we look to Harnett's contentions that res judicata principles do not apply to his claims in this litigation. In its opinion on the merits of this case, the district court observed that Harnett's EMSI fraud claim could not be subject to res judicata because the failures of the defendants to abide by alleged promises to channel new servicing business to EMSI were "not known [by Harnett] to be misrepresentations at the time" of the dismissal of *Harnett I* in February 1984. The district court therefore reasoned that because Harnett did not know of the actual division of servicing business between EMI and EMSI until he received notice of the freeze out merger of EMSI in November 1984, the fraud claim alleged in this case could not have been the subject of *Harnett I,* and thus could not be precluded by the judgment in that action.

■■■ Actual knowledge of a potential claim is not a requirement for application of the rules of merger and bar, however; rather, the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment. *See Restatement (Second) of Judgment* § 24(1) (1982). For purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls. This principle distinguishes from this case those cases where the challenged claim did not exist at the time of the prior litigation, *see, e.g., Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Here, the record is clear that at the time of the judgment in *Harnett I,* the alleged diversion of servicing business away from EMSI had already taken place.

■■■ An exception to the general principle that lack of knowledge will not avoid the application of res judicata rules is found in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action. *See Restatement (Second) of Judgments* § 26 comment *j.* Nevertheless, although Harnett alleged that the defendants' fraud in this case included concealment of the actual business of both EMI and EMSI, Harnett cannot assert that the concealment was such that it prevented his raising these fraud claims as part of *Harnett I.* Harnett sought and obtained discovery in *Harnett I* of the business records of EMI and EMSI to the date of that litigation, so he necessarily received information enabling him to conclude both that EMI was servicing mortgages and that EMSI's servicing portfolio had not expanded beyond that which it held at the time of its spin-off from EMI in early 1983. Moreover, Harnett possessed a copy of the EPIC/CSL consolidated annual report, dated March 31, 1983, which disclosed the spin-off of EMSI, mentioned that EMSI received in the spin-off the "existing mortgage servicing operations of EPIC," and indicated that EPIC might enter into subservicing agreements with EMSI. The financial statement unambiguously indicated that EMI was continuing to engage in mortgage servicing, a fact thoroughly inconsistent with the purported representations of Billman and McCuistion to Harnett that EMI would turn over its future servicing business to EMSI. In view of discovery material made available to Harnett

in *Harnett I,* as well as this report received by Harnett prior to commencing *Harnett I,* it is impossible to say that any concealment or fraud by Billman and McCuistion, even if they existed, acted to prevent the assertion of Harnett's EMSI fraud claim during the pendency of *Harnett I.*

■ Harnett is therefore subject to the general principle that the judgment in *Harnett I* extinguishes any claims that might have been raised in that litigation and that are, for res judicata purposes, the same claims as those advanced in the earlier case. Res judicata precludes the litigation by the plaintiff in a subsequent action of claims "with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." *Restatement (Second) of Judgments* § 24(1) (1982); *Adkins v. Allstate Insurance Co.,* 729 F.2d 974, 976 (4th Cir. 1984) (embracing Restatement rule).

■ Harnett argues that because the claims he raised in this litigation were not for the identical injuries and remedies that were the subject of *Harnett I,* they should not be precluded. The rule of claim preclusion we apply, however, asks only if a claim made in the second action involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action. To decide this, we measure the scope of "transaction or series of connected transactions" by considering pragmatic factors such as common origin and relation, as well as whether the acts giving rise to the claim would be considered as part of the same unit by the parties in their business capacities. *See Restatement (Second) of Judgments* § 24(2) (1982). Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief. *Id.* comment *c.*

■ Analysis under this transactional test reveals that virtually all the claims that Harnett now raises are precluded by the judgment entered in *Harnett I.* Harnett set out seven "claims for relief" in his complaint below. The first claim, arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1982) and Rule 10b–5, 17 C.F.R. § 240.10b–5, alleged securities fraud in connection with the ERSI and EMSI spin-offs and with the freeze out mergers involving ERSI and EMSI in November and December of 1984. The second claim, under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q (1982), and the third claim, under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1982), made claims relating solely to the ERSI and EMSI spin-offs. Harnett's fourth and fifth claims alleged violations of Delaware and Virginia securities laws arising out of both the spin-offs and the freeze out mergers.

In *Harnett I,* Harnett alleged that prior to the ERSI and EMSI spin-offs, Billman and McCuistion had illegitimately obtained EPIC stock to which they were not entitled. In Paragraph 45 of his complaint in the prior action, Harnett alleged that:

This assignment of shares and/or option to Billman and McCuistion diluted the value of Harnett's interest in EPIC both with respect to the purported merger of EPIC into CS & L Service Co. as well as with respect to EPIC's spin-off of EPIC Realty Services, Inc. and EPIC Mortgage Servicing, Inc.

Harnett's securities claims in this case are based on his assertions that he was damaged in his interests in ERSI and EMSI by the misappropriation of shares, that in both the ERSI and EMSI spin-offs defendants misrepresented the number of EPIC shares outstanding, that at the time of the freeze outs these misrepresentations were continued, and that the defendants misrepresented, in connection with the EMSI spin-off, the nature of the servicing business to be received and conducted by EMSI. The complaint in *Harnett I,* however, made the claim relating to the dilution of Harnett's interest in EMSI and ERSI, and that claim is precluded from litigation here as part of Harnett's federal or state securities law claims. Moreover, as we concluded above, all of the essential elements of the claim that Billman and McCuistion had misrepre-

sented the nature of EMSI's future business operations existed at the time *Harnett I* was dismissed, and because that claim arises directly out of the EPIC/CSL merger and EMSI spin-off that were an integral part of Harnett's claims in *Harnett I,* it is necessarily part of the same transaction or series of transactions at issue in the earlier case. To the extent that Harnett's securities claims depend on the alleged misrepresentations by Billman and McCuistion at the time of the EMSI spin-off, the claims are precluded by the judgment in *Harnett I.* The only securities claims that survive *Harnett I,* therefore, are those contained in Claim 1 and in the state securities law claims that depend on misrepresentations in connection with the purchase of Harnett's EMSI and ERSI stock on the freeze out mergers, which took place several months after the judgment in *Harnett I.*

Claim 6 of the complaint in *Harnett I* set out a state law claim for fraud. That claim, however, is also based on Harnett's allegations that the defendants fraudulently obtained EPIC stock and misrepresented and later concealed the diversion of servicing business between EMSI and ERSI and EMI. These claims also arose out of the same transaction or series of transactions, the various mergers and spin-offs, that were the basis for Harnett's claims in *Harnett I,* and the district court should properly have dismissed these claims as res judicata.

Harnett's final claim in this case is that Billman and McCuistion breached their fiduciary duty to him, as a minority shareholder, by their treatment of ERSI and EMSI. This claim relies partially on the share misappropriation and misrepresentation questions we have held precluded under other theories of relief, but also includes alleged breaches in the interval between the *Harnett I* judgment in February 1984 and the freeze out mergers later that year. To the extent that this claim is limited to breaches and injuries during that interval, it survives *Harnett I.* Accordingly, we conclude that res judicata precludes the litigation of all of Harnett's claim except this portion of the fiduciary duty claim, and the portion of the securities claims particular to the freeze out mergers of ERSI and EMSI. The district court granted summary judgment against each of these claims on other grounds, however, and we now examine Harnett's claims that the district court erred in doing so.

### III

■ The district court dismissed all of Harnett's securities law claims upon the conclusion that neither the acquisition of ERSI and EMSI stock in the spin-offs, nor the disposition of Harnett's shares in the freeze outs, constituted a "purchase or sale of securities" permitting Harnett to make claims arising under federal or state securities laws. Having found that most of Harnett's securities claims are barred by res judicata, however, we conclude that when Harnett's securities claims are limited to the freeze out mergers, it is unnecessary to resolve the question whether the forced "sale" of stock in a freeze out merger is a "sale" giving rise to securities claims. This follows because it is apparent on the record that Harnett has neither alleged, nor could he prove, any injury arising out of fraud in connection with the freeze out mergers.

Harnett's remaining securities claims are his § 10 and Rule 10b–5 allegations in his first claim, and his state law claims that incorporate the allegations of the federal claim. Examination of Harnett's complaint reveals, however, that there is no allegation of injury from these remaining claims. Harnett asserts that the misstatements and omissions in connection with the freeze outs, which relate to Harnett's claims that Billman and McCuistion misappropriated EPIC shares and therefore received too great a proportion of EMSI and ERSI shares, constituted misstatements and fraudulent behavior actionable under the securities laws. Although such behavior can only form the basis for a cause of action in Harnett if it caused an injury, the complaint makes no allegation of injury flowing from the alleged fraud, and it is apparent to us that there could be none.

The actual injury allegedly suffered by Harnett as a result of the share misappropriation is a dilution of Harnett's interests in ERSI and EMSI. While it is true that Harnett was further injured if, after the freeze outs, the misappropriation caused him to receive a lesser amount for his share of the companies, that result is not caused by any deceptive statements in connection with the share misappropriation. Not only did Harnett already know of this dilution claim, so that any misrepresentations did not conceal from him what he perceived to be the true state of affairs, but the misrepresentations themselves cannot have caused the dilution, which occurred as a result of earlier behavior by the defendants.

Because Harnett's remaining securities claims do not contain an allegation of injury caused by securities law violations, and because it was not possible for Harnett to show such an injury, the securities claims were properly subject to dismissal by the district court.

## IV

Finally, Harnett argues that the district court erred in dismissing his claims for breach of fiduciary duty. The rationale for the district court's decision was that the fiduciary duty claim asserted by Harnett was a derivative claim available only to shareholders, and that because Harnett was no longer a shareholder of EMSI or ERSI, a derivative claim was no longer available to him.

We conclude that the district court properly applied Delaware law[2] in finding that a former shareholder such as Harnett was without standing to assert a derivative claim for breach of fiduciary duty. Although Harnett asserts that he could make these claims as a sole shareholder, it is clear that under Delaware law such an action is to be made only derivatively, *see Cole v. Ford Motor Co.*, 566 F.Supp. 558, 568–69 (W.D.Pa.1983) (applying Delaware law). Moreover, a derivative

action is not among the remedies available to a minority shareholder faced with a short form merger. Such shareholders are limited to injunctive relief if the merger is unfair, and to appraisal rights if the merger is fair. *See Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del.1983).

The judgment of the district court is affirmed in part and reversed in part.

AFFIRMED IN PART; REVERSED IN PART.

2. Prior to their acquisition in the freeze out mergers, and at the time that Harnett was a shareholder, ERSI and EMSI were both Delaware corporations.