914 F.2d 39
 31 ERC 1993, 17 Fed.R.Serv.3d 995, 21
Envtl. L. Rep. 20,483
 Elwin E. ALIFF; Lin-Elco Corporation, Plaintiffs-Appellants,
v.
JOY MANUFACTURING COMPANY, a Pennsylvania Corporation,
Defendant-Appellee.
Elwin E. ALIFF; Lin-Elco Corporation, Plaintiffs-Appellants,
v.
JOY TECHNOLOGIES, INCORPORATED, a Pennsylvania Corporation,
Defendant-Appellee.
 Nos. 89-2782, 89-2785.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 9, 1990.
Decided Sept. 12, 1990.
 
 Gary Allen Davis (argued), Gilreath & Associates, Knoxville, Tenn., for plaintiffs-appellants.
 Dennis Charles Sauter (argued), Jackson & Kelly, Charleston, W.Va. (W.T. Shaffer, Thomas J. Hurney, Jr., Jackson & Kelly, Charleston, W.Va., on the brief), for defendant-appellee.
 Before ERVIN, Chief Judge, and CHAPMAN and WILKINSON, Circuit Judges.
 ERVIN, Chief Judge:
 
 
 1
 Plaintiffs Elwin E. Aliff and Lin-Elco Corporation (hereinafter collectively referred to as "Aliff") appeal from two decisions rendered by the United States District Court for the Southern District of West Virginia in favor of Joy Technologies, Inc. ("Joy").[1] First, the district court dismissed Aliff's suit to recover response costs under Section 107(a) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9607(a), holding that it was barred by the doctrine of res judicata. Second, Aliff appeals the district court's denial of his motion for a new trial in an earlier suit brought against Joy for fraud and misrepresentation in the sale of a building. Upon carefully examining the arguments presented by both sides, we affirm the decisions of the district court.
 
 I.
 
 2
 In April 1980 Aliff purchased the building involved in this controversy from Joy. From 1968 to 1980, Joy's business at the building was repairing and rebuilding mine machinery motors, some of which were filled with fluids containing polychlorinated biphenyl ("PCB"). During 1977 and 1978, Joy moved to a new facility in a nearby community where it serviced only motors that did not contain PCB, but it continued to service motors containing PCB and to store fluids containing PCB at the old facility. In late 1979, Joy listed the building for sale for the price of $485,000. In 1980, Aliff purchased it from Joy for $235,000-$213,000 for land and improvements and $21,500 for fixtures and equipment.
 
 
 3
 During the time Joy used the building, fluid containing PCB, a probable carcinogen, was commonly used as a lubricant, insulator, and coolant in the motors serviced by Joy. The Environmental Protection Agency ("EPA"), which regulates the use and storage of PCB under the Toxic Substances Control Act of 1976, 15 U.S.C. Sec. 2605(e), first inspected the building for compliance with its PCB regulations in 1979, after Joy had moved the bulk of its operations to its new building. Joy followed the EPA's then applicable procedures for cleaning the building before it sold it to Aliff. Aliff, however, had the building tested again in early 1984 and discovered that the building was still contaminated.
 
 
 4
 In late 1984 Aliff filed his first suit against Joy for false representation in conveying the building. He sought punitive damages and compensatory damages for (1) the difference between the market value of the property in 1980 assuming its condition was as Joy had represented and its actual value at the time of the sale, (2) the value of his equipment and supplies in the building, (3) inconvenience and annoyance, and (4) loss of income and lost business opportunities. After a trial in September 1987, the jury awarded Aliff $250,000 in compensatory damages for the decrease in the value of the building. Thereafter, contending that the damages were inadequate, Aliff appealed the district court's judgment denying him a new trial. On appeal, this court affirmed the district court in an unpublished opinion and refused to order a new trial. Aliff v. Joy Technologies, Inc., 873 F.2d 1437 (4th Cir.1989) (hereinafter "Aliff I" ).
 
 
 5
 In 1986, the EPA ordered Joy to perform another clean-up of the building to meet current standards. Joy employed Remedial Corporation ("REMCOR") to clean up the site under the supervision of the EPA and spent approximately five million dollars cleaning the equipment and interior of the building, excavating contaminated soil, and landscaping the area.
 
 
 6
 REMCOR completed its first attempt to decontaminate the building and submitted a report to the EPA in July 1987 wherein it stated that the inside of the building met the EPA's cleanup standards. The EPA contracted with an independent consulting firm, Versar, to take samples at the site to verify that the building complied with safety standards. Versar's sampling report, issued in December 1987, disclosed that the building was still contaminated at levels exceeding the EPA's cleanup standards in several areas. Following the Versar report, the EPA ordered Joy to clean the facility further, and REMCOR returned to the site in early 1988. After additional decontamination efforts, REMCOR reported to EPA again that the cleanup was complete. Relying upon these representations, EPA approved the cleanup even though no further sampling was done at that time to verify compliance with EPA standards.
 
 
 7
 Before the trial of Aliff I, Aliff hired his own consultant to inspect the premises and a testing laboratory to take samples at the site. No evidence of their conclusions was introduced at trial. After REMCOR's 1988 cleanup activities, Aliff hired other consultants to evaluate REMCOR's efforts and to perform further sampling at the site. Their reports, issued in mid-1989, concluded that the facility was still contaminated at levels exceeding recommended safety standards.
 
 
 8
 On February 7, 1989, Aliff filed a new action ("Aliff II ") against Joy under Section 107 of CERCLA for reimbursement of response costs incurred in conducting certain remedial activities as a result of the PCB contamination released by Joy.[2] The Aliff II complaint alleged current damages for relocation expenses, medical evaluation and monitoring costs, equipment replacement costs, attorney's fees, analytical costs, remedial costs, and "future response costs" arising from the alleged inadequate cleanup of the site. Joy filed a motion to dismiss, and on August 10, 1989, the district court entered an order of dismissal against Aliff. The district court held that the judgment in Aliff I barred the claims presented in Aliff II, the CERCLA action, under the doctrines of res judicata and collateral estoppel.
 
 
 9
 On February 16, 1988, Aliff also filed a motion in Aliff I pursuant to Federal Rule of Civil Procedure 60(b)(2) requesting a new trial based upon the discovery of new evidence showing that the building was still contaminated. The district court denied the motion on August 28, 1989.
 
 
 10
 From these two decisions, Aliff now appeals.
 
 II.
 
 11
 The district court dismissed Aliff's suit under CERCLA, holding that the action was barred by the doctrines of res judicata and collateral estoppel because of the earlier fraud suit brought by Aliff and tried in 1987. The Supreme Court has summarized the related doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion:
 
 
 12
 A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties....
 
 
 13
 Southern Pacific R.R. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27-28, 42 L.Ed. 355 (1897). There are three elements necessary to trigger claim preclusion by res judicata: (1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action. See Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); Harnett v. Billman, 800 F.2d 1308, 1312 (4th Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).
 
 
 14
 There is no question but that the final judgment entered in Aliff I is "a judgment on the merits" involving the same "parties or their privies" as those involved in the instant case. Aliff argues, however, that his CERCLA claim escapes the preclusive effect of the judgment in Aliff I because it is a different cause of action than his state law fraud claim.
 
 
 15
 In Harnett v. Billman, this court broadly applied the doctrine of res judicata to preclude claims in a second action. It held that two causes of action were sufficiently the same when the second claim "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Harnett, 800 F.2d at 1313 (citing Restatement (Second) of Judgment Sec. 24(1) (1982)). In other words, "[r]es judicata precludes the litigation by the plaintiff in a subsequent action of claims 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.' " Id. at 1314 (quoting Restatement (Second) of Judgment Sec. 24(1) (1982)); see also Adkins v. Allstate Ins. Co., 729 F.2d 974, 976 (4th Cir.1984) (embracing Restatement rule).
 
 
 16
 There is no simple test to determine what constitutes the same cause of action for res judicata purposes. Each case presents different facts that must be assessed within the conceptual framework of the doctrine. Examining the history of litigation between the parties in the present case, we believe Aliff's CERCLA claim could have been brought in Aliff I because it arises from the same factual basis, namely the contaminated building. Aliff's consultants had examined the facility before the September 1987 trial but did not testify in the first trial. There was other evidence presented at the first trial about the extent of contamination and the rehabilitation efforts. In addition, the jury was instructed in Aliff I:
 
 
 17
 [Y]ou may take into account activities undertaken by Joy subsequent to the sale of the building which may have mitigated or minimized the plaintiff's alleged damages.
 
 
 18
 If you find that Joy's cleanup activities have reduced the plaintiff's damages, then you may reduce the plaintiff's damages accordingly.[3]
 
 
 19
 In view of these facts, it appears that Aliff possessed sufficient evidence to construct a CERCLA theory of recovery in Aliff I, and in fact the jury in the first trial considered the issues of contamination, the cleanup, and their effects on the value of the building.
 
 
 20
 Aliff contends that res judicata cannot bar this present action because he neither attempted to recover damages under CERCLA in his first suit nor presented any evidence to establish a claim under section 107. The law, however, is well established that res judicata may apply even though the plaintiff in the first suit proceeded under a different legal theory. A prior judgment on the merits binds the parties "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but [also] as to any other admissible matter which might have been offered for that purpose." Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974) (citation omitted), quoted in Adkins, 729 F.2d at 976 (1984); see also Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (res judicata bars previously available claims "regardless of whether they were asserted or determined in the prior proceeding"), quoted in Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc., 892 F.2d 355 (4th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990). This court in Harnett also held that actual knowledge of a potential claim at the time of the first suit is not required for res judicata to apply. Harnett, 800 F.2d at 1313; see also Peugeot Motors, 892 F.2d at 359 ("Courts presume that a litigant ... raised all grounds arising out of the same factual context to support his claims."). If the claim existed at the time of the first suit and "might have been offered" in the same cause of action, then it is barred by res judicata from being brought in a subsequent suit. This sequence is exactly what happened in the present case, and we therefore agree with the decision of the district court.
 
 III.
 
 21
 Aliff also contends that the district court should have granted his motion for a new trial of the claims raised in Aliff I. "The disposition of motions under Rule 60(b) is ordinarily a matter within the discretion of the District Court which will not be disturbed on appeal absent a showing of abuse of that discretion." Werner v. Carbo, 731 F.2d 204, 206 (4th Cir.1984).
 
 
 22
 A party requesting a new trial must make a showing of timeliness, a meritorious position, lack of prejudice to the opposition, and exceptional circumstances. Werner, 731 F.2d at 207; Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir.1979). Once the movant has made such a showing, he must proceed to satisfy one or more of the rule's six grounds for relief from judgment. Aliff asserts that he should be granted a new trial because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b).
 
 
 23
 The newly discovered evidence with which Aliff seeks a new trial in Aliff I consists of test results and expert reports that show that the building was still contaminated at the time of the trial. Specifically, the allegedly new evidence includes the reports by the EPA's contractor, Versar, and Aliff's own consultants who evaluated REMCOR's cleanup efforts. However, all of these findings after that trial could have been discovered before the trial. Aliff, in fact, had hired a consultant and Technical Testing Laboratory to inspect the building before the trial.[4] Their testing indicated residual contamination, and Aliff notified the EPA of inadequacies in the cleanup before the trial.[5]
 
 
 24
 Because the status of the building could have been discovered before trial, we do not find any abuse of discretion by the district court in denying the motion for a new trial on the basis of newly discovered evidence.
 
 IV.
 
 25
 All things considered, the district court's dismissal of Aliff's second suit and its denial of his motion for a new trial of the first suit are
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Joy Technologies, Inc. was formerly Joy Manufacturing Company. For purposes of these appeals, the two names refer to the same corporate entity
 
 
 [2]
 Section 107 of CERCLA provides in pertinent part:
 (a) Notwithstanding any provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 (1) the owner and operator of a vessel or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous wastes were disposed of ...
 (4) ... shall be liable for--
 (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....
 42 U.S.C. Sec. 9607. This court has recently recognized a private right of action under section 107. See Richland-Lexington Airport Dist. v. Atlas Properties, Inc., 901 F.2d 1206, 1208 (4th Cir.1990).
 
 
 [3]
 No evidence was presented in Aliff I concerning the value of the real estate or personal property after the clean-up effort, but this court on appeal found this jury instruction to be only harmless error not requiring reversal. Aliff I, slip op. at 9
 
 
 [4]
 Joy has moved to strike portions of Aliff's brief because of alleged misrepresentations concerning the timing of the hiring of one of Aliff's consultants. That motion to strike is hereby denied
 
 
 [5]
 Moreover, in September 1986, one year before the trial, Joy had moved for a continuance because the cleanup was not finished. Opposing this motion, Aliff argued that the "expert testimony currently available [is sufficient to] provide a lawful basis upon which the extent and nature of damages can be determined."