**UNITED STATES of America, Plaintiff,**

v.

**MOFFITT, ZWERLING & KEMLER, P.C., Defendant.**

Civ. A. No. 94CV1384.

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 10, 1995.

38.2–2226. Section 38.1–389.1 contained nearly identical language to the current statute.

Helen F. Fahey, U.S. Atty., Jay Apperson, and Gordon D. Kromberg, Asst. U.S. Attys., Alexandria, VA, for the U.S.

William B. Moffitt, John K. Zwerling, Lisa B. Kemler, Moffitt, Zwerling & Kemler, P.C., Alexandria, VA, and Arthur F. Mathews, and Craig M. Blackwell, Wilmer, Cutler & Pickering, Washington, DC, for law firm.

## MEMORANDUM OPINION

ELLIS, District Judge.

This detinue and conversion action is in reality yet another chapter in a lengthy criminal forfeiture saga. The saga grows out of the payment of $103,800 of attorneys' fees to Moffitt, Zwerling & Kemler, P.C. (the "Law Firm") by a client who obtained the money through drug trafficking.[1] Until now, the government's forfeiture efforts have relied solely on the federal scheme for criminal forfeiture set forth in 21 U.S.C. § 853. Previous chapters in the saga chronicle these efforts, which have not been entirely successful. Because the Law Firm spent almost all of the $103,800 before the government obtained a restraining or forfeiture order, the government, in seeking forfeiture under § 853, is now limited to recovering property traceable to, or derived from, the $103,800.[2] At present, the government is engaged in what is proving to be a difficult and complex effort to identify traceable property held by the Law Firm and its partners.[3] Seeking to avoid the complexities and difficulties of tracing, the government has filed the instant action in detinue and conversion under Virginia's common law. In this action, the government alleges that the Law Firm wrongfully converted or detained $103,800 that belonged to the government by virtue of federal forfeiture law, and is therefore liable for that amount plus interest, regardless of how or when the Law Firm spent the $103,800.

The matter is now before the Court on cross motions, the government's motion for summary judgment and the Law Firm's dismissal motions. For the reasons stated, the Law Firm's motion to dismiss must be granted, thereby rendering moot the government's motion for summary judgment.

## I.[4]

In August 1991, William P. Covington was under investigation for distribution of cocaine, and sought to retain the Law Firm to defend him. On August 23 and 24, Covington paid $103,800 cash to the Law Firm, money which the Law Firm promptly deposited in several bank accounts. The government's investigation of Covington soon bore fruit. On October 30, he was indicted on drug trafficking, firearms, and money laundering charges. A superseding indictment followed on January 9, 1992. The indictments included broad forfeiture counts covering all of Covington's property derived from criminal activity.

The government eventually became aware of the $103,800 fee payments made by Covington. On May 11, 1992, the government filed a bill of particulars identifying the fees as property subject to forfeiture. The following day, the Court, on the government's motion, entered a restraining order with respect to the $103,800 and property traceable to it. By this time, however, over eight months had passed and the Law Firm no longer had most of the $103,800. With the exception of $3,695 held in an escrow account on Covington's behalf, the Law Firm had disbursed the remainder of the money in the ordinary course of its business.

Covington eventually pled guilty to several charges. At his sentencing on February 25, 1993, the Court ordered the forfeiture under 21 U.S.C. § 853(a) of all property constitut-

1. See In re Moffitt, Zwerling & Kemler, P.C., 846 F.Supp. 463 (E.D.Va.1994), appeal dismissed, No. 94–5167 (4th Cir. June 28, 1994) (hereinafter Moffitt I).

2. See In re Moffitt, Zwerling & Kemler, P.C., 864 F.Supp. 527 (E.D.Va.1994) (hereinafter Moffitt II).

3. See In re Moffitt, Zwerling & Kemler, P.C., 875 F.Supp. 1152 (E.D.Va.1995) (hereinafter Moffitt III).

4. The facts involved in this matter have been extensively presented in Moffitt I, Moffitt II, and Moffitt III. Only those facts necessary for context and the resolution of the questions presented are set forth here.

ing the proceeds of Covington's drug trafficking. The next day, pursuant to § 853(c), the Court ordered the forfeiture of the $103,800 that Covington transferred to the Law Firm, subject to the rights of third parties to be asserted under § 853(n). Thereafter, the Law Firm filed a § 853(n) petition, contending that it was a bona fide purchaser "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B). After a full evidentiary hearing, the Court denied the petition, finding that the Law Firm had not met its burden of proving that it was reasonably without cause to know of the prospect of forfeiture. *See Moffitt I*, 846 F.Supp. at 472–76.

The government then proposed a final decree of forfeiture of the $103,800, which the Law Firm opposed on the ground that, with the exception of $3,695, it had spent the money received from Covington long before the entry of the May 1992 restraining order or the February 1993 forfeiture order. In response, the government advanced several theories to support the Law Firm's obligation to pay $103,800 to the government, notwithstanding that the bulk of the money had already been spent. First, the government argued that money is fungible and interchangeable under § 853, and therefore any money held by the Law Firm was subject to forfeiture. Second, the government argued that because it gained title to the $103,800 under the February 1993 forfeiture order, it could recover that amount from the Law Firm in a civil action for conversion under Virginia's common law. Further, the government contended that it could raise such a conversion claim in the context of the forfeiture proceeding, because § 853(g) authorizes courts to take actions to "protect the

interest of the United States in the property ordered forfeited." The Court rejected each of the government's arguments.[5]

Although the government failed on these theories, it succeeded in establishing that § 853 provides for forfeiture of property "derived from" criminal proceeds, and therefore requires forfeiture of property traceable to the $103,800. 21 U.S.C. § 853(a); *Moffitt II*, 864 F.Supp. at 541–52. Thus, the government next turned its attention to determining what happened to the $103,800 and whether the Law Firm or its partners obtained property traceable to it. That effort, including the related discovery, is currently ongoing. *See Moffitt III*.

The government commenced the instant action on October 21, 1994.[6] It is a civil action that seeks return of the $103,800 on two alternative theories, conversion and detinue.[7] The complaint alleges that title to the $103,800 vested in the United States at the time of Covington's criminal activities by virtue of § 853. As a result, the government contends that the Law Firm, whether or not it has spent the money, is now liable in detinue or conversion under Virginia's common law for its wrongful possession or conversion of the money.

The government seeks summary judgment on the ground that the undisputed facts establish the elements of conversion and detinue. The Law Firm counters with four grounds for dismissal, namely that (i) the government's action is barred by claim preclusion, (ii) the government, bound by having pursued federal criminal forfeiture, cannot now sue in detinue or conversion, (iii) the government has not established the requisite elements of a detinue or conversion claim, and (iv) the action is preempted by federal

5. With respect to the government's conversion theory, the Court held that § 853(g) merely empowers courts to preserve forfeited property, but does not permit courts to entertain state-law claims for recovery of property not forfeited under § 853's provisions. *Moffitt II*, 864 F.Supp. at 539–40. The Court expressly noted that it reached no decision on whether the government could proceed against the Law Firm in a separate civil action based on some state-law theory, such as conversion. Similarly, the Court noted that it did not reach the question whether the

determination of title under § 853 would be binding in such a state-law action. *Id.* at 540–41 n. 38, 544 n. 49.

6. Subject matter jurisdiction in this matter arises under 28 U.S.C. § 1345, which provides that district courts have original jurisdiction of civil actions commenced by the United States.

7. The government also seeks interest for the period of the Law Firm's wrongful possession of the $103,800.

forfeiture statutes. If none of these grounds for dismissal succeed, the Law Firm contends that summary judgment for the government is still improper because there are disputed factual issues to be developed.[8] The parties having fully briefed and argued the issues raised, this matter is now ripe for disposition.

## II.

Claim preclusion, or *res judicata*, generally applies where (i) the prior action results in a judgment on the merits, (ii) the prior and subsequent action involve claims by the same parties or their privies, and (iii) the prior and subsequent action arise out of the same transaction or series of connected transactions. *Aliff v. Joy Manufacturing Co.*, 914 F.2d 39, 42–43 (4th Cir.1990); *Harnett v. Billman*, 800 F.2d 1308, 1313–14 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). As long as the two actions arise from the same transaction, claim preclusion applies even if the actions raise different legal theories. *Aliff*, 914 F.2d at 43. Yet, claim preclusion does not apply where a plaintiff could not pursue certain theories or claims in the first action because of limitations on the court's authority or jurisdiction to entertain them. *Davenport v. North Carolina Dept. of Transportation*, 3 F.3d 89, 97 n. 8 (4th Cir.1993) (plaintiff risks claim preclusion by not joining all theories in first action only if forum exists

that can handle all claims); Restatement 2d (Judgments) § 26 (1988).

Applied here, these principles compel the conclusion that claim preclusion does not bar the government's conversion and detinue claims. To be sure, the Law Firm is correct that the government's detinue and conversion claims arise from the same transaction as the forfeiture action. Yet, as the government notes, it had no opportunity to present the conversion and detinue claims in the federal criminal forfeiture case. Indeed, the government made precisely such an attempt when it sought unsuccessfully to assert a conversion claim in the forfeiture proceeding on the basis of § 853(g). *Moffitt II*, 864 F.Supp. at 539–40. For the same reasons, the government also could not have pursued a detinue claim in the forfeiture proceeding. Claim preclusion therefore does not bar the present action.[9]

## III.

The doctrine of election of remedies also does not bar the government's detinue and conversion action. The Law Firm argues that the government cannot pursue a detinue or conversion action after having sought criminal forfeiture of the $103,800. It relies, by analogy, on recent cases finding that the Double Jeopardy Clause prevents the government from pursuing separate criminal and civil forfeiture proceedings against a criminal defendant.[10] These cases

8. The Law Firm argues that, even if the matter is not dismissed, summary judgment for the government is improper because it needs discovery to prepare some defense, such as laches or estoppel, based on the government's delay in seeking this forfeiture. *See Moffitt III*, 875 F.Supp. at 1160 (discussing such delay's effect on tracing proceeding). The government responds that (i) laches is not a defense to its claims, (ii) laches is not available against the government, and (iii) there has been exhaustive factual development of this case already. Because the Law Firm demonstrates proper grounds for dismissal, it is unnecessary to resolve these issues.

9. The Law Firm also argues that § 853's legislative history reflects Congress's desire that claims regarding forfeitable property be settled quickly and not in piecemeal fashion. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess. 208 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3384, 3391. While true, this general desire is of no help to the

Law Firm; it does not itself prevent the assertion of conversion or detinue claims against property also subject to § 853 forfeiture proceedings. At most, this legislative history indicates that § 853(n) petitions, claims by third parties interested in forfeited property, should be ancillary to the main forfeiture action, rather than being resolved as separate actions. The present action is not a § 853(n) petition, nor is it brought by a third party wishing to prevent a forfeiture. Quite simply, this general legislative history is not relevant here.

10. *See United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1222 (9th Cir.1994) (criminal prosecution and civil forfeiture action based on same offense must be brought in same proceeding, that is, same indictment); *United States v. Torres*, 28 F.3d 1463, 1464 (7th Cir.1994) (stating same rule, but finding Torres was not party to forfeiture proceeding that preceded criminal prosecution because he made no claim to forfeited prop-

stem from recent Supreme Court opinions indicating that civil forfeiture may constitute punishment for double jeopardy purposes if designed in part to deter or punish.[11] Yet, double jeopardy is not present here because neither the government's § 853 forfeiture action nor the instant action constitutes punishment of the Law Firm. Section 853's purpose is to punish only criminal defendants. It is not meant to punish third parties, even those who receive property with reason to know it is subject to forfeiture. *See Moffitt II*, 864 F.Supp. at 543–44. Moreover, where criminal proceeds are at issue, it is well established that forfeiture serves remedial, rather than punitive, purposes. *See S.E.C. v. Bilzerian*, 29 F.3d 689, 696 (D.C.Cir.1994); *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); *Moffitt I*, 846 F.Supp. at 476. It is equally clear that Virginia's law on detinue and conversion is intended to allow recovery of property and to remedy injuries resulting from interference with property rights, not to punish thievery. *See Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 365 (1956) (good faith is not defense to conversion); *Talley v. Drumheller*, 135 Va. 186, 115 S.E. 517, 518 (1923) (manner in which defendant acquires possession is immaterial in detinue). Thus, the Double Jeopardy Clause is inapplicable here because the Law Firm has not been put in jeopardy even once, let alone twice.

■ The Law Firm argues further that, even if Double Jeopardy is not strictly applicable, it is wrong to allow the government two bites at its apple, especially when the government could not force a criminal defendant to defend himself against a second action. But this argument also fails because there is no "one bite of apple" rule. The government is not prevented from taking a second bite unless some rule of law, such as *res judicata* or double jeopardy, prevents it. None does so here.

■ In a similar vein, the Law Firm argues that § 853's legislative history requires criminal forfeiture to be used only as an "alternative" to civil forfeiture. *See* S.Rep. No. 98–225, *reprinted in* 1984 U.S.C.C.A.N. at 3379–80. This argument has already been persuasively rejected. Congress intended § 853 to be a "concurrently available alternative" to civil forfeiture, rather than a "mutually exclusive" one. *See United States v. Dunn*, 802 F.2d 646, 647–48 (2d Cir.1986), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987). Thus, unless double jeopardy results, the government may pursue both criminal and civil forfeiture against the same property. Similarly, the government is not precluded from bringing a detinue or conversion action to recover the $103,800 merely because it previously sought to recover the same money in a § 853 proceeding.

### IV.

The Law Firm next argues that the government has not established the required elements of a detinue [12] or a conversion [13] claim. Each cause of action is treated separately.

---

erty), *cert. denied*, — U.S. —, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). By contrast, double jeopardy does not occur when the government pursues criminal penalties and civil forfeiture in one simultaneous proceeding. *See United States v. One Single Family Residence Located at 18755 North Bay Road, Miami*, 13 F.3d 1493, 1499 (11th Cir.1994); *United States v. Millan*, 2 F.3d 17, 19–21 (2d Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994).

**11.** *See Department of Revenue v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (holding that Montana's marijuana tax assessed after criminal sanctions violates Double Jeopardy); *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (holding that civil forfeiture that constitutes punishment is subject to Excessive Fines Clause); *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding that civil sanction constitutes punishment for double jeopardy purposes if it serves retributive or deterrent, rather than remedial, purposes).

**12.** Detinue is nearly identical to the action of replevin. *See* 66 *Am.Jur.2d Replevin* § 5 (1973).

**13.** Conversion is closely related to the actions of trover and trespass. *See* 18 *Am.Jur.2d Conversion* § 1 (1985). For a helpful discussion of the distinctions among, and varied historical origins of, the actions of replevin, detinue, trover, and conversion, see *Williams Management Enterprises, Inc. v. Buonauro*, 489 So.2d 160, 161 n. 1 (Fla.Dist.Ct.App.1986).

## A.

To recover in detinue under Virginia law, the plaintiff must establish (1) that plaintiff has a property interest in the thing sought to be recovered, (2) that plaintiff has the right to immediate possession of the property, (3) that the property is capable of identification, (4) that the property is of some value, and (5) that defendant had possession at some time prior to the institution of the detinue action. *York v. Jones*, 717 F.Supp. 421, 427 (E.D.Va.1989); *Vicars v. Atlantic Discount Co.*, 205 Va. 934, 140 S.E.2d 667, 670 (1965). The first, second, and fifth of these elements are in dispute here. In particular, the question is *when* these requirements must be met. Must the government establish that it had a property interest in and right to immediate possession of the $103,800 in August 1991, when the Law Firm accepted Covington's money, or in October 1994, when the government filed its detinue complaint? Similarly, while it is beyond question that the Law Firm once possessed the $103,800, must the government also prove that the Law Firm still possessed the money in October 1994 when the instant suit was filed?

Answers to these questions follow logically from the nature of a detinue action. Detinue is "a possessory action having for its object the recovery of specific personal property." *MacPherson v. Green*, 197 Va. 27, 87 S.E.2d 785, 789 (1955); *Sinclair v. Young*, 100 Va. 284, 40 S.E. 907, 908 (1902); 66 *Am.Jur.2d Replevin* § 160 (1973). Thus, the crux of a detinue action is that a defendant currently possesses property that rightly belongs in a plaintiff's hands. Accordingly, it is immaterial what happened before the action commenced, that is, it does not matter how and when defendant obtained the property, or whether plaintiff then had a right or interest in it. *See Talley v. Drumheller*, 135 Va. 186, 115 S.E. 517, 518 (1923). Rather, plaintiff must have an interest in, and right to immediate possession of, the property at the time the action commences. *Henderson v. Foster*, 139 Va. 543, 124 S.E. 463, 469 (Va. 1924); 26A *C.J.S. Detinue* § 5 (1956). In the case at bar, it is beyond dispute that the government had title and right to immediate possession of the $103,800 on October 21, 1994, the date it instituted its detinue action. By virtue of the February 1993 forfeiture order, the government obtained "[a]ll right, title, and interest" in the money. 21 U.S.C. § 853(c).

It also follows logically from the nature of a detinue action that the defendant must have possession of the disputed property at the time the action commences. *Austin's Executor v. Jones*, 21 Va. (Gilmer) 341, 348 (1821); *Burnley v. Lambert*, 1 Va. (1 Wash.) 308, 312 (1794); 66 *Am.Jur.2d Replevin* § 164; 26A *C.J.S. Detinue* § 7. Further, money is treated in detinue as a specific chattel, that is, it is not fungible and interchangeable. *See, e.g., Commonwealth v. Dean*, 245 Pa.Super. 322, 369 A.2d 423 (1976); *Bob White Chevrolet, Inc. v. Hayles*, 44 Ala.App. 411, 211 So.2d 157, 159 (1968); 66 *Am.Jur.2d Replevin* § 13.[14] Thus, the general rule in Virginia and elsewhere is that a detinue action is defeated if defendant spent or transferred the money in question *prior* to commencement of the action.[15] There is one exception to this rule, which provides that a detinue action is not defeated by transfers that are wrongful, evasive, or in

---

**14.** The Court's previous determination that money is not fungible under 21 U.S.C. § 853 is irrelevant to the instant question. *See Moffitt II*, 864 F.Supp. at 536–39. Even though money is not fungible under § 853, it is treated as fungible in some contexts. *See id.* at 539 n. 33. Detinue, like § 853, is simply not one of those contexts.

**15.** Thus, it is misleading to suggest, as some prior cases have, that detinue lies where defendant had possession "at some time prior to" commencement of the action. *York*, 717 F.Supp. at 427; *Vicars*, 140 S.E.2d at 670. Rather, plaintiff's showing that defendant once had possession merely shifts the burden of proof to defendant, who may defeat the action if he proves that he no longer possesses the property. *Lynch v. Thomas*, 30 Va. (3 Leigh) 682, 694 (1832); *Austin's Executor*, 21 Va. at 351–52; *Burnley*, 1 Va. at 312; 6A *Michie's Jurisprudence of Virginia & West Virginia Detinue & Replevin* § 8 (1991).

Note, however, that a detinue action is not defeated if defendant destroys or dissipates the property *after* the suit commences. Plaintiff may still recover in detinue for the value of the chattel on the date of the verdict. *Broad Street Auto Sales, Inc. v. Baxter*, 230 Va. 1, 334 S.E.2d 293, 294 (1985).

bad faith.[16] But for this exception, "plaintiff might by contrivance be kept in a perpetual round of suits without effect," since every defendant could evade an impending detinue action by transferring the property just before the plaintiff reached the courthouse to file a suit. *Burnley,* 1 Va. at 312.

[14] By the time the government commenced its detinue action in October 1994, the Law Firm had dissipated all but $3,695 of the $103,800. *See Moffitt II,* 864 F.Supp. at 531. Forfeiture of the $3,695 has already been ordered, and so the government's detinue claim is moot with respect to it. As to the remainder of the $103,800, all record facts indicate that the Law Firm's dissipation of the money was in good faith and in the ordinary course of business. *Moffitt III,* 875 F.Supp. at 1156, 1166. In sum, because the Law Firm spent the bulk of the $103,800 before it was sued, the government's detinue claim must be dismissed.

### B.

The government's second, alternative cause of action is conversion. Under Virginia law, conversion occurs when (i) plaintiff has a right to immediate possession of property,[17] and (ii) defendant wrongfully exercises or assumes authority over the property, depriving plaintiff of possession. *McCormick v. AT & T Technologies,* 934 F.2d 531, 535 (4th Cir.1991) (applying Virginia law); *Bader v. Central Fidelity Bank,* 245 Va. 286, 427 S.E.2d 184, 186 (1993). As in detinue, the initial issue here is one of timing: when must the plaintiff have the right to immediate possession of the convert-

ed property? Conversion is an action sounding in tort for damages arising from the wrongful seizure of property. *Buckeye National Bank v. Huff & Cook,* 114 Va. 1, 75 S.E. 769, 772 (1912). The gist of conversion is that plaintiff's property is injured by a wrongful act of the defendant. Thus, the key point in time is the moment when the wrongful act or conversion occurs. *Austin's Executor,* 21 Va. at 348–49 (holding that "the time of the conversion gives the date to which the action relates"). At the moment of the alleged conversion, the plaintiff must have a right to immediate possession of the property that is converted. *Harvey v. Epes,* 53 Va. (12 Gratt.) 153, 166 (1855); 18 *Am.Jur.2d Conversion* §§ 2, 75–77; 89 *C.J.S. Trover & Conversion* §§ 72–73 (1955).

The difficult question presented is therefore whether the government had a right to immediate possession of the $103,800 in August 1991, when the Law Firm converted the money to its use. The government presents two arguments, each based on federal forfeiture statutes, that it had a right to immediate possession of the money at that time.

### 1.

First, the government contends that it had a right to immediate possession of the $103,-800 in August 1991, the time of the alleged conversion, by virtue of the "relation back" provision in § 853(c). This section provides that "[a]ll right, title, and interest" in property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c). Thus, the government contends that it ob-

---

**16.** The clear modern consensus is that defendant is not liable in detinue if he transfers the property in good faith before the action commences, regardless of whether the transfer occurs by operation of law or is a voluntary one. *See* 66 *Am.Jur.2d Replevin* §§ 27, 164; 26A *C.J.S. Detinue* § 7(c)(2). The Virginia cases on this point, none of which are recent ones, suggest that defendant must have been "divested by due course of law" or "legally evicted" to defeat the detinue claim. *See Lynch,* 30 Va. at 694; *Burnley,* 1 Va. at 312. Yet, the rationale expressed in these cases supports the general modern rule, for the Virginia courts' concern was with transfers made with an eye toward evading an impending detinue suit. *Burnley,* 1 Va. at 312. Thus, it appears that Virginia courts today would treat the Law Firm's good faith dissipation of the $103,800 as

relieving it of liability in detinue, even though the dissipation did not occur by operation of law.

**17.** Virginia cases on this point suggest that plaintiff must have both (i) a "property interest" in the subject of the action, and (ii) a right to immediate possession of it. *United Leasing Corp. v. Thrift Insurance Corp.,* 247 Va. 299, 440 S.E.2d 902, 906 (1994); *White v. Bonney,* 110 Va. 864, 68 S.E. 273, 273 (1910); *Harvey v. Epes,* 53 Va. (12 Gratt.) 153, 166 (1855). It is unclear what the former requirement adds to the latter, and the clear modern rule is that a right to immediate possession is alone a sufficient interest to support a conversion action. *See* 18 *Am.Jur.2d Conversion* § 76.

tained title to the $103,800 under the February 1993 forfeiture order, that this title relates back to the time of Covington's criminal activities, and that it therefore had a right to possession of the $103,800 in August 1991 when the Law Firm received the funds.

■ The relation back fiction originated in the common law of *in rem* forfeiture, and has been expressly enacted in several federal forfeiture statutes, including § 853. The Supreme Court recently discussed the operation of the relation back provision in another statute, 21 U.S.C. § 881, in *United States v. 92 Buena Vista Avenue*, —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). *Buena Vista* stands for the propositions (i) that the United States cannot profit from the relation back doctrine unless and until it obtains a forfeiture order, but (ii) that when a forfeiture order enters, the United States obtains title relating back to the moment of the criminal activity. —— U.S. at ——, 113 S.Ct. at 1135–37 (Stevens, J., plurality); *id.* at ——, 113 S.Ct. at 1138–39 (Scalia, J., concurring in judgment).[18] In other words, *Buena Vista* indicates that the Law Firm could properly claim *in August 1991* that it owned the $103,800. No forfeiture order had been entered with respect to the money, and the United States therefore had no interest in it. Yet, *Buena Vista* indicates that the government may properly claim *today* that it owned the $103,800 *in August 1991*. A forfeiture order was entered in February 1993, giving the government title to the money retroactive to the time of Covington's drug trafficking activities.

Yet *Buena Vista* does not entirely resolve the question presented here, namely, whether the government had a right to immediate possession of the $103,800 in August 1991. The Law Firm argues that a conversion must occur at one real point in time. If plaintiff's right to possession does not exist on the date of the alleged conversion, the cause of action cannot retroactively spring into being because of legal fictions and subsequent events. By contrast, the government argues that its

retroactive title under § 853(c) is not so limited in effect. Where, as here, a forfeiture order has entered, the United States must be treated as if it has owned the property since the underlying crimes were committed. And this is true, the government argues, in all contexts, including a conversion action.

■ The statutory language supports the government's view. The statute simply provides for retroactive title, and does not limit the purposes for which the title is effective. *See* 21 U.S.C. § 853(c). It is clear that Congress included the relation back provision in § 853(c) with one particular purpose in mind, namely "to permit the voiding of certain preconviction transfers" that otherwise might defeat forfeiture. S.Rep. No. 98–225, 98th Cong., 2d Sess. 200, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3383. Yet, Congress chose to enact a provision whose effect goes beyond that discrete purpose. In sum, there is no indication in § 853 that the United States' retroactive title does not apply in the context of a conversion action. The statute's plain language compels the conclusion that it does.

Support for this conclusion may also be found in the cases in which retroactive title under § 853(c) has been given effect for a variety of purposes. For example, once a forfeiture order has entered, the United States must be treated as having owned the property since the commission of the underlying crimes, and therefore is immune from state property taxes accruing during the period of retroactive ownership. *See United States v. Real Property Known as 9901 Gladiolus Drive*, 837 F.Supp. 1162, 1166–67 (M.D.Fla.1993). Similarly, the Second Circuit recently implied that, after a forfeiture decree has entered, the government can rely on its retroactive ownership of electronically-transferred funds to justify their seizure, even though the interception of the funds would otherwise violate the Electronic Communications Privacy Act. *See United States v. Daccarett*, 6 F.3d 37, 53–54 (2d Cir.1993)

---

18. Cases decided since *Buena Vista* accurately characterize its holding that the government does not obtain title until there is a decree of forfeiture, but then has title effective from the date of the criminal activity. *See United States v.*

One Parcel of Land in Name of Mikell, 33 F.3d 11, 12 (5th Cir.1994); *United States v. Real Property Located at 41741 National Trails Way*, 989 F.2d 1089, 1091 (9th Cir.1993).

(holding that government could not properly claim it had retroactive ownership where no forfeiture order had yet been entered), *cert. denied,* —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994).

The general rule that the government's title under § 853(c) is to be given retroactive effect does not apply in certain limited situations not presented here. First, as the Supreme Court recognized in *Buena Vista,* the government does not obtain retroactive title until a forfeiture order is entered. Thus, it follows by simple logic that the government does not yet have retroactive title while it is still in the course of proceedings to obtain a forfeiture order. *See Buena Vista,* —— U.S. at ——, 113 S.Ct. at 1137–38 (government may not claim it has retroactive title to defeat "innocent owner" defense to entry of forfeiture order).[19] Second, the government's acquisition of retroactive title cannot alter rights and obligations that have already become fixed and unchangeable before the forfeiture order is entered. For example, the Second Circuit has held that an insurance policyholder cannot be retroactively divested of her insurable interest by the relation back rule, because New York law provides that "the rights under a fire insurance policy are fixed both as to amount and standing to recover at the time of the fire loss." *Counihan v. Allstate Insurance Co.,* 25 F.3d 109, 111 (2d Cir.1994) (quoting *Whitestone S & L Assoc. v. Allstate Insurance Co.,* 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971)).

■■ The Law Firm contends that in the instant case, like *Counihan,* the rights and obligations of parties under Virginia's common law with respect to conversion are unalterably fixed as of the date of the alleged conversion. Yet, no Virginia or other authority is cited for the proposition that a cause of action for conversion cannot arise retroactively by operation of the relation back doctrine of federal forfeiture law.[20] Nor does the Law Firm present a persuasive reason in policy or principle why conversion is a peculiar area where the general rule of retroactivity should not apply. It merely asserts, without authority, that an act cannot retroactively become a tort. While the idea of a lawful transaction retroactively becoming a wrongful taking is counterintuitive, the relation back rule is a legal fiction whose effect is counterintuitive in every instance.[21] In sum,

**19.** *See also United States v. One Parcel of Land in Name of Mikell,* 33 F.3d 11, 13 (5th Cir.1994) (where statute requires notice to "owner" of property prior to entry of forfeiture order, property's "owner" must be identified without regard to retroactive title); *United States v. Real Property Located at 41741 National Trails Way,* 989 F.2d 1089, 1091–92 (9th Cir.1993) (government's retroactive title does not defeat attorney's lien for fees incurred in defending against forfeiture).

**20.** The Law Firm does cite the Ninth Circuit's decision under California law that a conversion action cannot be created retroactively by the equitable remedy of a constructive trust. *CHoPP Computer Corp. v. United States,* 5 F.3d 1344, 1347–49 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 63, 130 L.Ed.2d 20 (1994). There, CHoPP won a civil judgment and obtained a constructive trust on certain funds, a portion of which funds the United States had previously seized pursuant to a tax levy. CHoPP brought an action against the United States, alleging that the tax levy was a conversion. CHoPP argued that it had a right to possession of the funds at the time of the levy because California law provides that a constructive trust relates back to the moment a wrongful taking occurs. *Id.* at 1348. On these facts, the Ninth Circuit held that CHoPP's constructive trust could not retroactively defeat the United States' tax levy.

Yet, the court's reasoning clearly reveals that the retroactive effect of a constructive trust in California law differs greatly from the retroactive effect of a forfeiture order in federal law. The *CHoPP* court reasoned that if a constructive trust could retroactively defeat "a prior and otherwise legal levy," then one creditor would be able to "deter competitors from satisfying their judgments against a common debtor." *Id.* This was not the purpose for the retroactivity of California's constructive trusts. By contrast, it is clear that § 853 forfeiture orders are retroactive precisely so that they may defeat prior and otherwise legal transfers of forfeitable property. Congress fully intended to deter transferees from knowingly accepting such property. *See* 21 U.S.C. § 853(c); *United States v. Reckmeyer,* 836 F.2d 200, 203 (4th Cir.1987); S.Rep. No. 98–225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.C.C.A.N. 3182, 3383. In sum, the United States' retroactive title, if applied here, serves a purpose closely related to that for which it was intended.

**21.** For example, it is beyond dispute that a lawful, completed sale of property can retroactively become void by operation of the relation back provision of § 853(c). This result is no more counterintuitive than the retroactive creation of a cause of action for conversion.

the statutory language and prior cases establish the general rule that the government's title under § 853(c) is to have retroactive effect, and that general rule is applicable here. As a result, the government, in retrospect, had title to, and a right to immediate possession of, the $103,800 in August 1991, the time of the alleged conversion.

### 2.

■ As an alternative theory, the government asserts that it had a right to immediate possession of the $103,800 in August 1991 by virtue of 21 U.S.C. § 881(b)(4), which allows the government to seize property without a warrant or other judicial process when "the Attorney General has probable cause to believe that the property is subject to civil forfeiture." This, too, is a sound theory. The plain language of § 881(b)(4) indicates that the government had the authority to seize the $103,800 as soon as it had probable cause to demand its forfeiture. It appears that the government had probable cause to seize all of Covington's cash at the time he paid the Law Firm's fees in August 1991. In fact, by that time, the government had already seized all of Covington's money it could locate, and the record strongly supports the conclusion that the government had probable cause to do so. First, in July 1991, a government agent submitted an affidavit to a federal magistrate judge, attesting that Covington had accumulated substantial amounts of money from drug trafficking and was believed to be actively attempting to conceal the money. The magistrate judge found probable cause to issue search and seizure warrants relating to Covington's property. Second, in October 1991, the grand jury indicted Covington and found probable cause for the inclusion of a forfeiture count based on the government's belief that $168,000 of Covington's illegitimate funds remained to be found. The government therefore had a right to seize the $103,800 in August 1991, although it was then unaware of the money's location.[22]

■ The Law Firm attacks the government's theory on several grounds, but none is ultimately persuasive. First, it argues that "seizure" under § 881(b)(4) does not constitute "possession." According to the Law Firm, the government does not obtain "possession" of seized property until it is successful in the ensuing forfeiture proceeding.[23] Yet, in ordinary language, to "seize" property means to obtain possession of it.[24] Moreover, the Fourth Circuit has specifically held that § 881(b) "provides methods by which the United States may obtain possession of" property. *United States v. Kemp,* 690 F.2d 397, 400 (4th Cir.1982).[25] By seizing property pursuant to the statute, the United States "assert[s] its right to immediate possession." *Id.* at 401. It is thus clear that the government's right to seize the $103,800 entailed a right to immediate possession of the money.

■ In a related vein, the Law Firm also argues that a conversion plaintiff's right to immediate possession of the property must be absolute and unconditional. While Virginia courts have never stated this rule, courts in several states have held that conversion lies only where plaintiff's right to immediate possession is "absolute and unconditional." *See, e.g., Gilbert v. Rafael,* 181 Ga.App. 460, 352 S.E.2d 641, 641 (1987); *Jones v. Brown,* 108 Ga.App. 776, 134 S.E.2d 440, 444 (1963); *Hoffman v. Allstate Insurance Co.,* 85 Ill.

---

**22.** It is true that the government did not actually exercise its right to seize the $103,800 under § 881(b). Yet, analogously, the Fourth Circuit has held that a warrantless search of a car may be justified by the government's right to seize the car pursuant to § 881(b), even if that right is not immediately exercised. *United States v. Bizzell,* 19 F.3d 1524, 1526–27 (4th Cir.1994); *United States v. $29,000—United States Currency,* 745 F.2d 853, 855–56 (4th Cir.1984).

**23.** The statute requires the government to initiate forfeiture proceedings promptly after seizing forfeitable property without a warrant. 21 U.S.C. § 881(b).

**24.** For example, *Black's Law Dictionary* defines "seizure" as "[t]he act of taking possession of property." *Black's Law Dictionary* 1219 (5th ed. 1979).

**25.** *Kemp* involved a previous version of § 881(b)(4), which provided for seizure of property which was "used or is intended to be used" in violation of federal drug laws. 690 F.2d at 400 n. 3. Section 881(b)(4) was amended to its present form in 1984, a change that was technical and conforming rather than substantive. S.Rep. 98–225, 98th Cong., 2d Sess. 214–15 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3397–98.

App.3d 631, 40 Ill.Dec. 925, 927, 407 N.E.2d 156, 158 (1980); *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill.App.3d 978, 276 N.E.2d 89, 91 (1971). Yet, even if this were the rule in Virginia, the Law Firm's argument misapprehends the "absolute and unconditional" requirement. It is the plaintiff's right to possession that must be absolute and unconditional. In other words, it must not be contingent on events that are uncertain or have not yet occurred.[26] But there is no requirement that plaintiff must have an absolute and unconditional right to continue possession of the property indefinitely. It is well established that conversion may occur where plaintiff has an immediate, though temporary, right to possession.[27] Thus, the government had an absolute and unconditional right to immediate seizure and possession of the $103,800 in August 1991 pursuant to § 881(b), even though its right to maintain possession was contingent on its success in a subsequent forfeiture proceeding.

In summary, although the government's detinue claim fails, the requisite elements of a conversion action are present here. The government has established that it had a right to immediate possession of the $103,800 in August 1991, the time of the alleged conversion, both by the retroactive § 853 forfeiture order and by its seizure power under § 881(b).

## V.

Preemption is the Law Firm's final ground for dismissal.[28] The Law Firm claims that the government's detinue and conversion claims are preempted by federal forfeiture law, specifically § 853 or § 881(b) of Title 21.[29] The Law Firm contends that these statutes preempt Virginia's common law in the circumstances of this case. Each statute is treated separately.

## A.

■ A federal statute preempts state law if (i) Congress expressed an intent that the federal statute supplant state law, (ii) Congress implied such an intent by regulating so pervasively as to leave no room for state regulation in the field, or (iii) state law actually conflicts with federal law, that is, it "stands as an obstacle to the accomplishment of the full purposes and objectives" of a federal statute. *English v. General Electric Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990) (quoting *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412–13 (4th Cir.1994)).[30] The Law Firm relies on the third of these alternative grounds for preemption.

■ It is important to note initially that the question presented here is not whether federal forfeiture law *generally* preempts Virginia's detinue and conversion law. It plainly does not. For example, § 853 would not preempt a detinue or conversion action against the Law Firm by a party other than

---

**26.** *See Gilbert,* 352 S.E.2d at 641 (right to immediate possession must be "absolute, unconditional, and exist at the time the action is commenced"); *Jones,* 134 S.E.2d at 444 (same); *Hobson's Truck Sales,* 276 N.E.2d at 91 (plaintiff's right to immediate possession must be "absolute and unconditional and not dependent upon some act to be performed"); 18 *Am.Jur.2d Conversion* § 76 ("[T]he right to maintain the action may not be based upon a right to possession at a future time....").

**27.** *See* 18 *Am.Jur.2d Conversion* § 75 ("Absolute and unqualified title is sufficient, but it is not required; a special, qualified, limited title, or a temporary interest, is sufficient.... Indeed, a mere right of possession is generally regarded as an interest sufficient to maintain the action.") (footnotes omitted).

**28.** The Court considers the Law Firm's preemption argument as a ground for dismissal of the government's conversion claim, and as an alternative ground for dismissal of the government's detinue claim.

**29.** For its detinue claim, the government's right to possession of the $103,800 is derived from the § 853 forfeiture order entered in February 1993. For its conversion claim, the government's right to possession is derived from § 853's relation back provision or, alternatively, from § 881's seizure powers.

**30.** An actual conflict between state and federal law also exists where, unlike here, it is impossible for a private party to comply with both. *See English,* 496 U.S. at 79, 110 S.Ct. at 2275.

the government, such as a suit by another law firm claiming it was promised a share of the fees paid by Covington. Likewise, if the government brought a detinue or conversion action against the Law Firm that did not rely on § 853 or another portion of federal forfeiture law, the action would not be preempted. These actions, because they are entirely independent of § 853, would not conflict with the purposes and objectives of the § 853 forfeiture scheme.[31] Rather, the question presented here is whether the government may properly pursue a state-law detinue or conversion action when its sole interest or right in the allegedly detained or converted property is derived from federal forfeiture law, specifically § 853.

■ The parties each suggest that the preemption question turns on one's view of why Congress enacted a substitute assets provision that pertains only to defendants and not to third parties. The government sees this as an inadvertent "hole" in the statute, which can be creatively and judicially repaired in the name of serving the statute's purpose of furthering the war on drugs. By contrast, the Law Firm sees the omission of a substitute assets provision applicable to third parties as a deliberate, thoughtful action by Congress to protect such parties under the statute. Neither position is appealing. The government's position is flawed because it asks too much of the judicial process. While judges certainly must interpret statutes, it is not the office of the judiciary to mend allegedly defective statutes. Legislatures fix statutes; courts interpret them. If the government's position asks too much of the judicial process, the Law Firm's position does the same with respect to the legislative process. While Congress on some occasions acts thoughtfully and deliberately, it certain-ly does not always do so. In this event, the reason Congress omitted a substitute assets provision applicable to third parties is unknown (and likely unknowable). In any event, it is unnecessary to speculate concerning what may have been in Congress's "mind" in omitting a third-party substitute assets provision because the detinue and conversion claims at bar are an improper supplement to the § 853 forfeiture provisions. It is enough, on this issue, to examine § 853, which examination plainly discloses that Congress has created a comprehensive criminal forfeiture scheme that contains provisions explaining in detail what property the government may obtain by way of forfeiture. The statute prescribes the forfeiture of some property, and proscribes the forfeiture of other, thereby describing completely and exclusively all the property Congress meant to be recovered by virtue of a § 853 forfeiture order. Where, as here, the government seeks to augment its § 853 forfeiture capabilities by resorting to state-law actions to reach property it could not obtain under § 853, it is plain that the government's use of state law "stands as an obstacle to the accomplishment of the full purposes and objectives" of Congress's carefully crafted forfeiture scheme. *Silkwood*, 464 U.S. at 248, 104 S.Ct. at 621. It follows, in these circumstances, that § 853 must preempt state conversion and detinue law.[32]

The government concedes, as it must, that the action at bar is designed to circumvent the fact that § 853 does not require third parties to forfeit substitute assets. To permit this circumvention could lead to troubling results. Were the government allowed to circumvent this aspect of § 853, then it might well attempt to use detinue or conversion

---

31. Similarly, Virginia forfeiture laws are clearly not preempted by § 853. *See, e.g.,* Va.Code §§ 19.2–368.19 to 19.2–368.22, 19.2–386.1 to 19.2–368.13 (criminal forfeiture provisions).

32. This conclusion, the government argues, leads to results that could not have been intended by Congress. Suppose, the government suggests, Covington had sought to avoid forfeiture of the $103,800 by giving it to a person who knew the money was derived from drug trafficking and was therefore subject to forfeiture. The government asks the Court to suppose further that the person spent the money before authorities secured an order forfeiting the money. In this event, the government finds it hard to believe that Congress did not intend for the person who received and spent the money to be liable to the government for $103,800. The fatal flaw in this argument is that § 853(p), the substitute assets provision, does not, by its terms, extend to third parties. Had Congress intended otherwise, it could and should have crafted § 853(p) to accomplish this purpose. *See Moffitt II,* 864 F.Supp. at 535–36.

actions to circumvent other aspects of the statute, such as § 853's protection of bona fide purchasers "reasonably without cause to believe" the property is subject to forfeiture. 21 U.S.C. § 853(c).[33] Such a circumvention would plainly be an obstacle to the accomplishment of § 853's purposes and objectives. Similarly, allowing state detinue or conversion claims to be used to augment § 853 forfeiture would allow the government to sidestep limitations on forfeiture by criminal defendants. For example, § 853(p) requires defendants to forfeit "substitute" property in some, but not all, circumstances. It applies only when the tainted property becomes unavailable "as a result of any act or omission of the defendant." 21 U.S.C. § 853(p). If, for example, a criminal's drug profits were destroyed in a tornado, or stolen from his home in a burglary, the government could not recover substitute assets from him under § 853(p). Yet, unless preempted by § 853, the government could file a state-law detinue or conversion action and effectively achieve forfeiture of substitute property in these circumstances. Just as § 853 must preempt state-law actions that circumvent its scheme in the manner of these examples, so, too, must it preempt the government's actions in the case at bar.

Section 853(k) also supports the conclusion that the government may not resort to state conversion and detinue actions to circumvent § 853's comprehensive scheme. It provides that a third party such as the Law Firm cannot intervene in the criminal proceeding or commence a civil action concerning the validity of its interest in the property. 21 U.S.C. § 853(k). Thus, a § 853(n) petition is the sole means by which such a party may assert its interest in property threatened with § 853 forfeiture. In other words, § 853(k) preempts state-law actions against the government, including actions in detinue and conversion, by third parties who wish to bypass § 853(n)'s procedures. This provision reinforces the conclusion that the § 853 proceeding is meant to be the exclusive avenue for determining what property the government can recover by virtue of a § 853 forfeiture order.

 This conclusion finds further support in the clear principles that emerge from cases that have considered the extent to which federal forfeiture laws preempt state property law. Federal forfeiture statutes generally rely on state law to define property rights and interests. For example, state law determines who is the owner of a particular item of property.[34] But once property interests are defined by state law, the federal forfeiture statutes alone control whether those property interests must be forfeited to the government. Thus, where a federal statute provides for forfeiture of a house used for

---

**33.** This is possible because a third party can raise § 853's bona fide purchaser defense only *after* a forfeiture order is entered. 21 U.S.C. § 853(n). And once the forfeiture order enters, the government might proceed to the state or federal courthouse, forfeiture order in hand, and file an action in detinue or conversion against the bona fide purchaser. And under Virginia law, a bona fide purchaser may be held liable in detinue or conversion even though he was entirely without reason to know he was accepting tainted property. *See Universal C.I.T.*, 92 S.E.2d at 365; *Talley*, 115 S.E. at 518; *supra* at p. 1197.

The government's response to this scenario is that the bona fide purchaser can always file a § 853(n) petition with the court that ordered the forfeiture. If the petition is successful, the forfeiture order will be amended so that it no longer covers the purchaser's property. *See Buena Vista*, —— U.S. at ——, 113 S.Ct. at 1141 (Scalia, J., concurring in judgment). As amended, the forfeiture order will no longer support the government's detinue or conversion claims. But there is surely an additional reason the government

may not use a detinue or conversion action to circumvent § 853's bona fide purchaser protection, namely that Congress did not intend for the government to obtain § 853 forfeiture orders and then opt out of § 853's comprehensive forfeiture scheme in favor of more liberal recovery through state-law actions.

**34.** For example, several courts have found that federal civil forfeiture statutes rely on state law to define an innocent owner's interest in property, and therefore do not preempt state law regarding the incidents of ownership in tenancy by the entireties. *See United States v. 35 Acres, More or Less, in Cherokee County*, 1991 WL 154348, No. 90–7376 (4th Cir. Aug. 15, 1991) (North Carolina law) (unpublished); *United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343, 347 (6th Cir.1990) (Michigan law), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991); *United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Avenue*, 894 F.2d 1511, 1517–19 (11th Cir.1990) (Florida law).

an illegal gambling operation, the federal statute preempts a state's "homestead exemption" that appears to preclude forfeiture of the house. *United States v. One Single Family Residence Located at 18755 North Bay Road,* 13 F.3d 1493, 1497–98 (11th Cir. 1994). Just as a party cannot use state law to *prevent* a forfeiture provided for by federal law, so, too, is the government precluded from using state law to *achieve* a forfeiture that federal law does not permit. In either case, federal forfeiture law preempts a state law that would effectively change the scope of federal forfeiture. Were the government's detinue or conversion action to succeed here, the government would recover property by virtue of a § 853 forfeiture order whether or not the property is not properly subject to forfeiture under § 853. State law is therefore preempted.

The government cites a number of cases for the proposition that private, state-law damages actions are generally not preempted even though comprehensive federal schemes regulate the same field. *Cipollone v. Liggett Group,* — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *English v. General Electric Co.,* 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Yet, these cases are inapposite for two reasons. First, the Law Firm does not contend that § 853 or any other federal forfeiture statute occupies its field to the complete exclusion of state law. Rather, it correctly argues that the government's use of state law to bypass a troublesome portion· of § 853's forfeiture scheme "stands as an obstacle to the accomplishment

of the full purposes and objectives" of the statute. *Silkwood,* 464 U.S. at 248, 104 S.Ct. at 621; *see supra* at p. 1203. Second, the cited cases do not stand for the proposition the government claims. In each case, the Supreme Court held that Congress intended for the federal scheme in question to preempt state law to some extent, but that some or all of the plaintiff's state-law claims were outside the scope of the preemption.[35] By contrast, the government's detinue and conversion claims here are plainly within the scope of § 853's preemption.

Finally, the government points to 21 U.S.C. § 903, which provides that § 853 shall not be construed as indicating Congress' intent to occupy its field to the exclusion of state law, unless there is a "positive conflict" between the federal scheme and the state law, "so that the two cannot consistently stand together."[36] Section 903 is irrelevant here for several reasons. First, it is important to note again that there has been no suggestion that § 853 occupies any field to the exclusion of state law. It does not preclude forfeiture actions pursuant to Virginia statute, nor does it affect detinue or conversion actions by the government or any other plaintiff whose interest in the subject property is not derived from § 853. Second, § 903 pertains only to state law "on the same subject matter" as subchapter I of Title 21, that is, drug control and enforcement. Thus, it is immaterial to the preemption of Virginia's detinue and conversion law. *See United States v. Lot 5, Fox Grove,* 23 F.3d 359, 363 n. 8 (11th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 722, 130 L.Ed.2d 627 (1995);

---

**35.** For example, the Court held that federal statutes fully occupy the field of nuclear safety regulation, but that they do not thereby preempt state-law tort claims against nuclear facilities. *See English,* 496 U.S. at 80–85, 110 S.Ct. at 2275–78; *Silkwood,* 464 U.S. at 249–56, 104 S.Ct. at 621–25. Similarly, in *Cipollone,* the Court held that the express preemption provision in the Public Health Cigarette Smoking Act of 1969 preempts a state-law tort claim that cigarette advertising failed to warn of smoking's hazards, but does not preempt claims based on other state-law theories, such as breach of express warranty or conspiracy. — U.S. at —, 112 S.Ct. at 2621–23 (plurality opinion); *see also Worm v. American Cyanamid Co.,* 970 F.2d 1301 (4th Cir. 1992) (finding express preemption provision in

Federal Insecticide, Fungicide and Rodenticide Act preempts state-law claims regarding labelling, but not claims relating to product design, manufacture, or testing).

**36.** Section 903 of Title 21 provides that:

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

*United States v. Stazola,* 893 F.2d 34, 38 (3d Cir.1990). And finally, even if § 903 were applicable here, it would not bar the conclusion that § 853 preempts state law in the circumstances of this case. Where, as here, the government resorts to state law seeking to use a § 853 forfeiture order to recover property that it cannot obtain under § 853, there is plainly a "positive conflict"[37] between § 853 and state law such that "the two cannot consistently stand together." 21 U.S.C. § 903.

**B.**

■ It is equally clear that the government's claims are preempted by federal law if they rely on the government's seizure powers under § 881(b), rather than the § 853 forfeiture order. In essence, the government contends that it could have recovered $103,800 from the Law Firm without ever instituting a forfeiture action against Covington or the Law Firm. Specifically, the government argues that there was probable cause to believe Covington's money was subject to civil forfeiture, it had the right to seize the $103,800 from the Law Firm pursuant to § 881(b)(4). Thus, the government's theory goes, it could have recovered $103,800 from the Law Firm by simply filing a detinue or conversion action under Virginia law at any time after the Law Firm accepted the money. Yet, Congress expressly stated that following a warrantless seizure pursuant to § 881(b), forfeiture proceedings "shall be instituted promptly." 21 U.S.C. § 881(b). This requirement clearly reflects Congress' intent that § 881(b) seizure operate as a prelude to a forfeiture action. Moreover, if the government were able to use detinue and conversion actions in this manner, it could easily evade important provisions of federal forfeiture statutes, radically expanding its as-set recovery capabilities in the process. For example, as explained earlier in this opinion, the government could effectively nullify the "bona fide purchaser" and "innocent owner" protections contained in federal forfeiture statutes. It could simply file conversion and detinue actions against every third party who accepted property that the government has probable cause to believe is forfeitable. The third parties' knowledge then would be irrelevant to their liability. *See Universal C.I.T.,* 92 S.E.2d at 365; *Talley,* 115 S.E. at 518; *supra* at p. 1197. Thus, § 881(b) clearly preempts the government's use of state law actions such as detinue or conversion where the government's interest in the property is derived from § 881(b), and where it seeks to obtain property that cannot be obtained via forfeiture under federal law.

**VI.**

To summarize, the government's conversion claim fails because it is preempted by federal law, whether it relies on § 853 or § 881(b). The government's detinue claim fails for the same reason, and also because the Law Firm no longer possessed the property that was allegedly wrongfully detained, the $103,800, at the time the government commenced its action. The Law Firm's motion to dismiss must be granted, and the government's motion for summary judgment must be denied.

An appropriate order shall issue.[38]

**37.** The government emphasizes that § 903 requires a "positive" conflict, and contends that the alleged conflict between state law and § 853 is at best a negative one, that is, a negative implication from the fact that § 853 does not contain a substitute assets provision applicable to third parties. As stated above, § 903 is not applicable here. Moreover, the government's argument misconstrues the meaning of the word "positive" in this context, which is that the conflict must be clear, direct, and certain, not that it must be "non-negative." *See* H.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 4566, 4629 (§ 903 requires a conflict that is "direct and positive"). It is positively clear that such a conflict is present here.

**38.** A final order will not be issued in this matter until the completion of the forfeiture proceeding, Misc. No. 93–0006–A, at which time the two actions will be consolidated for purposes of appeal.